# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **AZURE MIDSTREAM** | § | **Case No. 17-[_____] (___)** |
| **PARTNERS, LP,** *et al.*, | § | |
| | § | **Joint Administration Requested** |
| | § | |
| **Debtors.**[1] | § | **(Emergency Hearing Requested)** |

**EMERGENCY MOTION OF DEBTORS (I) AUTHORIZING DEBTORS' LIMITED USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO SECTIONS 105, 361, 362, 363, AND 507 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001, 6003, 6004, AND 9014 AND BANKRUPTCY LOCAL RULE 4001-1**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Azure Midstream Partners, LP (7595), Azure ETG, LLC (3388), Azure Holdings GP, LLC (0537), Azure Midstream Partners GP, LLC (8089), Azure TGG, LLC (6233), Marlin G&P I, LLC (6073), Marlin Logistics, LLC (8460), Marlin Midstream Finance Corp. (0130), Marlin Midstream, LLC (2587), Murvaul Gas Gathering, LLC (0826), Talco Midstream Assets, Ltd. (7004), and Turkey Creek Pipeline, LLC (1161).

Azure Midstream Partners, LP, its subsidiaries, and certain affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (this "**Motion**"):

### Relief Requested

1.      Pursuant to sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), Rule 4001-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the Procedures for Complex Chapter 11 Bankruptcy Cases (the "**Complex Case Procedures**") promulgated by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), the Debtors respectfully request:

   a. authorization for the Debtors, pursuant to Bankruptcy Code sections 105, 361, 362, 363, and 507 to (i) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**"), and other Prepetition Collateral[2] solely in accordance with the terms of the interim order (the "**Interim Order**"), including the 13-week cash disbursements and receipts budget annexed thereto (as such budget may be modified from time to time by the Debtors with the prior written consent of Wells Fargo Bank, National Association, as administrative agent (the "**Administrative Agent**") as set forth in the Interim Order, the "**Interim Budget**"), and (ii) provide adequate protection to the Administrative Agent under the Prepetition Credit Agreement (as defined herein), and the Prepetition Secured Parties (as defined herein);

   b. subject to entry of the Final Order (as defined herein), and except to the extent of the Carve-Out (as defined herein), authorization to grant adequate protection liens on the proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code, or any other similar state or federal law (collectively, the "**Avoidance Actions**");

   c. modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and Final Order, and authorization for the Administrative

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Interim Order.

Agent to exercise remedies under the Prepetition Loan Documents and the Interim Order upon the occurrence and during the continuation of a Termination Event (as defined herein);

d.  subject to entry of the Final Order, except to the extent of the Carve Out (as defined herein), the waiver of all rights to surcharge any Prepetition Collateral or Collateral (as defined herein) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

e.  that this Court hold an interim hearing (the "**Interim Hearing**") to consider the relief sought herein and entry of the proposed Interim Order;

f.  that this Court schedule a final hearing (the "**Final Hearing**") to consider entry of a final order (the "**Final Order**") granting the relief requested in this Motion on a final basis; and

g.  waiver of any applicable stay with respect to the effectiveness and enforceability of the Interim Order or the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

2.  A proposed form of Interim Order granting the relief requested herein is annexed hereto as **Exhibit A**.

3.  The Interim Budget is annexed to the Interim Order as **Exhibit A**.

4.  A copy of the Attorney Checklist Concerning Motion and Order Pertaining to Use of Cash Collateral (the "**Attorney Checklist**") is annexed hereto as **Exhibit B**.

### **Bankruptcy Rule 4001 Summary**

5.  In accordance with Bankruptcy Rules 4001(b)(1)(B) and 4001(d)(1)(B) and the Complex Case Procedures, the following table summarizes the material terms of the Interim Order:[3]

---

[3] This summary is qualified in its entirety by reference to the applicable provisions of the Interim Order.  To the extent there are any inconsistencies between this summary and the provisions of the Interim Order, the provisions of the Interim Order shall control.  Any capitalized terms used but not otherwise defined in this summary shall have the meanings ascribed to such terms in the Interim Order.

| Material Terms | Summary of Material Terms |
|---|---|
| **Parties asserting an Interest in Cash Collateral** Fed. R. Bankr. P. 4001(b)(1)(B)(i) | The Prepetition Secured Parties. *See* ¶ 3(a) |
| **Purposes for Use of Cash Collateral** Fed. R. Bankr. P. 4001(b)(1)(B)(ii) | The Debtors are authorized to use Cash Collateral solely in the amounts and in the manner set forth in the Interim Budget for conducting their operations and generating revenue in the chapter 11 cases, other general corporate purposes, satisfaction of the costs and expenses of administering the chapter 11 cases, including payment of any prepetition obligations that are necessary to preserve the value of the estates, and payment of professional fees to the Administrative Agent and the Prepetition Secured Parties. *See* ¶ 5(a) |
| **Budget Provisions** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | Other than with respect to the line item in the Interim Budget for "Agent Professional Fees", the Debtors shall adhere to the Budget on a line-by-line basis during the initial four-week period set forth in the Interim Budget (such initial four week period, the "**Interim Budget Period**"), with no carry-over surplus to any other line item(s) except to the extent agreed to in writing, *provided, however* that with respect to each line item in the Interim Budget, the Debtors may use Cash Collateral in excess of that set forth in the Interim Budget for that particular line item for each Interim Budget Period so long as the percentage deviation ("**Permitted Variances**") for each line item listed below during such Interim Budget Period shall not exceed: (i) 20% with respect to the "Net Receipts" line item under the "Receipts" section of the Interim Budget actually received by the Debtors during the four-week period immediately preceding the Testing Date (the "**Testing Period**"); (ii) 10% with respect to the "Operating Disbursements," "Omnibus Disbursements," "Corporate G&A Disbursements," "Tax Disbursements," and "Total Capital Expenditures" line items under the "Operating Disbursements" section of the Interim Budget actually disbursed by the Debtors during the Testing Period; and (iii) 10% with respect to the "Total Restructuring Adjustments" and "Debtor Professional Fees" line items under the "Restructuring Adjustments" section of the Interim Budget actually disbursed by the Debtors during the Testing Period.  The Administrative Agent may, in its sole discretion, agree in writing to the use of Cash Collateral in a manner or amount which does not conform to the Budget (other than Permitted Variances and the Line Item Carry Forward) (each such use of Cash Collateral, a "**Non-Conforming Use**").  If such written consent is given, the Debtors shall be authorized pursuant to the Interim Order to use Cash Collateral for any such Non-Conforming Use without further Court approval.  *See* ¶ 5(c) |
| **Duration of Use of Cash Collateral/ Termination Date** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The Debtors' right to use Cash Collateral pursuant to the Interim Order shall terminate (the date of any such termination, the "**Termination Date**") without further notice or court proceeding on the earliest to occur of: (i) February 24, 2017 if the Final Order (with an updated 13-week Budget, which updated Budget shall be in form and substance satisfactory to the Administrative Agent in its sole and absolute discretion) has not been entered by the Court on or before such date; or (ii) the occurrence of any of the events set forth in clauses (a), (b), (c), (d), (e), (f), (g), (h), (i), (j), (k), (l), or (m) of paragraph 11 of the Interim Order (each, a "**Termination Event**") and five (5) business days have passed following the delivery of a written notice by the Administrative Agent that provides notice of the occurrence of any Termination Event (unless such occurrence is waived by the Administrative Agent in its sole and absolute discretion). *See* ¶11. |
| **Termination Events** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The "**Termination Events**" include:<br><br>(a) (i) the entry of an order or (ii) the filing of a motion by any of the Debtors seeking entry of an order dismissing these chapter 11 cases or converting these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code;<br><br>(b) (i) the appointment or election of, or (ii) the filing of a motion by any of the Debtors seeking the appointment or election of, a trustee, examiner with expanded powers, or any |

| Material Terms | Summary of Material Terms |
|---|---|
| | other representative with expanded powers relating to the operation of the businesses in the chapter 11 cases; |

(c) the occurrence of the effective date or consummation date of a chapter 11 plan for the Debtors;

(d) the failure by the Debtors to make any payment required pursuant to the Interim Order when due;

(e) the failure by the Debtors to deliver to the Administrative Agent any of the documents or other information required to be delivered pursuant to the Interim Order within one (1) business day or any such documents or other information shall contain a material misrepresentation;

(f) the failure to adhere to the Interim Budget subject to Permitted Variances or Non-Conforming Uses;

(g) the Debtors shall create, incur or suffer to exist any postpetition liens or security interests other than: (i) those granted pursuant to the Interim Order; and (ii) carriers', maritime, mechanic's, operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any postpetition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (v) any other junior liens or security interests that the Debtors are permitted to incur under the Prepetition Loan Documents having a value of more than $1,000,000 in the aggregate at any one time;

(h) the Debtors shall create, incur, or suffer any other claim which is *pari passu* with or senior to the Adequate Protection Claims;

(i) the filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition Indebtedness or asserting any other cause of action against and/or with respect to the Prepetition Indebtedness, the Prepetition Collateral securing the Prepetition Indebtedness or any of the Prepetition Secured Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party);

(j) the sale or transfer of any assets of any Debtor outside the ordinary course of the Debtors' business except with the prior written consent of the Administrative Agent or the entry of an order or the filing of a motion by any of the Debtors seeking approval of the foregoing;

(k) (i) the entry of an order or (ii) the filing of a motion by any of the Debtors seeking entry of an order reversing, staying, vacating or otherwise modifying in any material respect the terms of the Interim Order, without the consent of the Administrative Agent;

(l) the entry of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code providing relief to any entity other than the Prepetition Secured Parties in an amount greater than $250,000 with respect to the Prepetition Collateral or the Adequate Protection Collateral without the written consent of the Administrative Agent, which consent may be withheld in its sole and absolute discretion; or

(m) to the extent not inconsistent with clauses (a) through (l) above, the failure of the

| Material Terms | Summary of Material Terms |
|---|---|
| | Debtors to perform, in any respect, any of the terms, provisions, or obligations under the Interim Order. *See* ¶ 11 |
| **Liens, Cash Payments or Adequate Protection Provided for Use of Cash Collateral** Fed. R. Bankr. P. 4001(b)(1)(B)(iv) | As adequate protection for any Diminution[4] in the value of the Collateral, and as an inducement to the Prepetition Secured Parties to permit the Debtors' use of the Cash Collateral, the Debtors will grant the following (the "**Adequate Protection Package**"): <br><br> **Section 507(b) Claim**:   The Adequate Protection Obligations due to the Prepetition Secured Parties shall constitute joint and several superpriority claims in the amount of the Diminution, if any, against the Debtors as provided in section 507(b) (and section 503(b)) of the Bankruptcy Code, with priority in payment over any and all other administrative expense claims against the Debtors, subject only to the Carve-Out. <br><br> **Adequate Protection Liens**.   As security for the Adequate Protection Obligations, effective as of the Petition Date the Debtors will grant the Administrative Agent the following security interests and liens for the benefit of the Prepetition Secured Parties for and to the extent of the Diminution, if any, subject only to the Carve-Out (all such liens and security interests, the "**Adequate Protection Liens**"): <br><br> (i) <u>Liens Junior to Certain Existing Liens</u>.  A valid, binding, continuing, enforceable, fully-perfected, non-voidable junior priority replacement lien on, and security interest in, all tangible and intangible assets, including without limitation, all prepetition and postpetition property of the Debtors' estates, and all products and proceeds thereof (other than property described in clause (ii) below), that is subject to (x) valid, perfected and unavoidable liens in existence as of the Petition Date or (y) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid, perfected, and unavoidable liens are senior in priority to the security interests and liens in favor of the Administrative Agent; and <br><br> (ii) <u>Liens Senior to Certain Existing Liens</u>.  A valid, binding, continuing, enforceable, fully-perfected, non-voidable priming lien on, and security interest in the Prepetition Collateral and all of the Debtors' all tangible and intangible assets and all prepetition and postpetition property of the Debtors' estates, whether no existing or hereafter acquired, including without limitation, all products and proceeds thereof, whether arising from section 552 of the Bankruptcy Code or otherwise, and, subject to the entry of a Final Order, the proceeds of avoidance actions under chapter 5 of the Bankruptcy Code, and including, without limitation, all chattel paper (whether tangible chattel paper or electronic chattel paper); all documents; all general intangibles (including payment intangibles and software); all goods (including inventory, equipment and fixtures); all computer hardware and software and all rights with respect thereto, including, any and all licenses, options, warranties, service contracts, program services, test rights, maintenance rights, support rights, improvement rights, renewal rights and indemnifications, and any substitutions, replacements, additions or model conversions of any of the foregoing; all instruments; all investment property; all deposit accounts, and all other bank accounts and all deposits therein; all money, cash or cash equivalents; all supporting obligations and letter of credit rights; all crude oil, natural gas, natural gas liquids, and natural gas in transit; all pipeline tickets, pipeline nominations, pipeline statements and pipeline tender letter; all books, records, writings, data bases, information and other property relating to, used or useful in connection with, or evidencing, |

---

[4] "**Diminution**" means an amount equal to the aggregate diminution or other decline in value, if any, of the Prepetition Secured Parties' interest in the Prepetition Collateral (including the Cash Collateral) from and after the Petition Date resulting from the use, sale, or lease by the Debtors of the Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

| Material Terms | Summary of Material Terms |
|---|---|
| | embodying, incorporating or referring to any of the foregoing; and money, cash, cash equivalents or other income, or any other type of proceeds, generated by the sale or other transfer of real property; and to the extent not otherwise included, all proceeds, tort claims, insurance claims and other rights to payments not otherwise included in the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing, *provided that* such liens and security interest shall not prime (x) any valid, perfected and unavoidable senior liens and security interests in existence as of the Petition Date that are held by or granted to any person other than the Administrative Agent or (y) valid and unavoidable senior liens and security interests in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code and that are held by or granted to any person other than the Administrative Agent.  For the avoidance of doubt, the Adequate Protection Liens shall not be subject to or *pari passu* with any intercompany claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor.<br><br>Certain Mortgaged Properties Excluded:  Notwithstanding anything in the Interim Order to the contrary, for the avoidance of doubt, except as otherwise expressly agreed to by the Administrative Agent, no Building (as defined in applicable Flood Insurance Regulations (as such term is defined herein) that is located in a Special Flood Hazard Area (as defined in the applicable Flood Insurance Regulations) shall be included in the mortgaged properties or be encumbered for the benefit of the Prepetition Secured Parties as part of the Adequate Protection Collateral, unless such Building is covered by flood insurance obtained by the Borrower or a Grantor in an amount as required by the applicable Flood Insurance Regulations.<br><br>**Fees and Expenses**:  The Debtors will pay certain eligible fees and expenses, including professionals' fees incurred by the Administrative Agent.<br><br>**Other Covenants**:  The Debtors will comply with certain other covenants; namely, the Debtors will maintain all Cash Collateral in existing accounts with the Administrative Agent subject to deposit account and control agreements and their cash management arrangements in a manner consistent with the interim order granting their first day cash management motion.<br><br>**Asset Sales; Application of Proceeds**.  Unless otherwise agreed to by the Administrative Agent, all sales, transfers, exchanges and other dispositions of Prepetition Collateral shall be in exchange for 100% cash consideration and (i) the greater of: (x) 85% of the net proceeds and (y) $22.5 million from the net proceeds of any such sale, transfer, exchange or other disposition or (ii) any lesser amount that the Debtors and Administrative Agent may mutually agree upon shall, upon the consummation of such sale, transfer, exchange, or disposition be deposited in an account of the Debtors with the Administrative Agent and will be applied immediately to reduce permanently the Prepetition Indebtedness, without further order of the Court, *provided that* (i)(y) of this section shall only be applicable in the case of a sale of all or substantially all assets.<br><br>The Debtors shall not use, sell, or lease any material assets outside the ordinary course of business without prior consultation with the Administrative Agent at least five (5) business days prior to the date on which the Debtors seek authority for such use sale or lease.<br><br>**Reporting**.  The Debtors will comply with all reporting requirements set forth in the Prepetition Credit Agreement, and provide various additional reports to the Administrative Agent as set forth in the Interim Order. *See* ¶¶8,9 |
| **Negative Pledge**<br>Fed. R. Bankr. P. | The Interim Order provides that the Debtors shall not create, incur or suffer to exist any postpetition liens or security interests other than: (i) those granted pursuant to the Interim |

| Material Terms | Summary of Material Terms |
|---|---|
| 4001(b)(1)(B)(iii) | Order; and (ii) carriers', maritime, mechanic's, operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any postpetition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (v) any other junior liens or security interests that the Debtors are permitted to incur under the Prepetition Loan Documents having a value of more than $1,000,000 in the aggregate at any one time. *See ¶*11(g) |
| **Liens on Avoidance Actions** Fed. R. Bankr. P. 4001(b)(1)(B)(iv) | Subject to entry of a Final Order, the Prepetition Secured Parties will receive liens on the proceeds of Avoidance Actions. *See ¶* 8(b). |
| **Carve Out** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The Interim Order provides for a "**Carve-Out**" of certain statutory fees and allowed professional fees of the Debtors and any statutory committee appointed in the chapter 11 cases, including (i) the Court and U.S. Trustee fess, (ii) up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code, (iii) all Court-approved, accrued and unpaid reasonable fees, disbursements, costs and expenses (the "**Professional Fees**") incurred by professionals or professional firms retained by the Debtors or their estates pursuant to sections 327 or 328 of the Bankruptcy Code and any statutory committee, which Professional Fees (x) are incurred in accordance with the Budget in effect at such time (subject to the Permitted Variances), (y) are allowed by the Court at any time and (z) were incurred (regardless of when invoiced or applied for) at any time before or on the first business day following delivery by the Administrative Agent to counsel to the Debtors, the U.S. Trustee, and counsel to any committee of a written notice (the "**Carve-Out Notice**"); and (iv) the Professional Fees allowed by the Court or another court of competent jurisdiction in an aggregate amount not exceeding [$_____] which Professional Fees are incurred after the first business day following delivery by the Administrative Agent of the Carve-Out Notice; *provided that* (a) subject to the Debtors' right to raise issues with respect to the occurrence of a Termination Event as further described in paragraph 17 of the Interim Order, the Carve-Out shall not be available to pay Professional Fees incurred by any party, including the Debtors or any committee or any professionals engaged thereby, in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Administrative Agent or Prepetition Secured Parties, and it being understood that up to an aggregate of $25,000 shall be made available to a committee, if any, for investigation costs, as described in paragraph 19 of the Interim Order; (b) so long as a Carve-Out Notice has not been delivered, the Carve-Out shall not be reduced by the payment of Professional Fees allowed at any time by this Court and payable under sections 328, 330, and 331 of the Bankruptcy Code; *provided however*, that any payment or reimbursement made after delivery of a Carve-Out Notice in respect of allowed Professional Fees (exclusive of the application of any retainers by any of the Professionals) shall permanently reduce the Carve-Out on a dollar-for-dollar basis, and (c) without prejudice to the rights of Professionals or the Debtors to contest any such objection, nothing in this Interim Order shall be construed to impair the ability of any party to object to any fees, expenses, reimbursements, or compensation sought by any such Professionals, including the Administrative Agent. *See ¶* 8(c) |
| **Waiver or Modification of the Automatic Stay** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The automatic stay under section 362 of the Bankruptcy Code will be (i) on and after the Termination Date, deemed modified and vacated to the extent necessary to permit the Administrative Agent, in accordance with the terms and conditions of the Interim Order, absent further order of the Court, to exercise the rights and remedies available under the Prepetition Loan Documents, the Interim Order or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral to collect any amounts payable to the Prepetition Secured Parties pursuant to the Interim Order and apply the same to such obligations, and (ii) modified to permit the Debtors and each of the Prepetition Secured Parties to perform transactions and actions contemplated |

| Material Terms | Summary of Material Terms |
|---|---|
|  | under the Interim Order. *See* ¶¶12, 16 |
| **Section 506(c) Waiver** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | Subject to entry of the Final Order, all rights to surcharge any Prepetition Collateral under sections 105 or 506(c) of the Bankruptcy Code or any other applicable principle of equity or law shall be and are hereby finally and irrevocably waived and such waiver shall be binding upon the Debtors and all parties in interest in the Cases. *See* ¶13 |
| **Section 552(b)(1) Waiver** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | Subject to entry of the Final Order, the "equities of the case" exception under section 552(b)(1) of the Bankruptcy Code shall not apply to the Administrative Agent and the Prepetition Secured Parties with respect to proceeds, products, offspring, rents and profits of any of the Prepetition Collateral. *See* ¶ 27 |
| **No Marshaling** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The Administrative Agent will not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any of the Prepetition Collateral or the Adequate Protection Collateral. *See* ¶ 12 |
| **Determination Regarding Claim** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | Subject to challenge by parties in interest pursuant to paragraph 19 of the Interim Order, the Debtors admit, stipulate and agree to the amount and validity of claims relating to the Prepetition Indebtedness and the validity and priority of the liens secured such claims. *See* ¶3 |
| **Release, Waivers or Limitation on any Claim or Cause of Action** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | Subject to challenge by parties in interest pursuant to paragraph 19 of the Interim Order, each of the Debtors and the Debtors' estates waives and releases (i) all claims and causes of action relating to any of the Prepetition Collateral and any of the Prepetition Loan Documents or the transactions contemplated under such documents that exist on the date of entry of the Interim Order and (ii) any and all claims and causes of action regarding the validity, priority, perfection or avoidability of the liens or the claims of the Administrative Agent and the other Prepetition Secured Parties in the Prepetition Collateral. *See* ¶¶3, 21 |
| **Challenge Period** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | The Debtors' acknowledgements, stipulations, and releases shall be binding on the Debtors, and also on each of the Debtors' estates, and all other parties in interest, including any committee appointed in these chapter 11 cases or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors unless (i) a party in interest or the committee (if any) has properly filed an adversary proceeding or contested matter by no later than the date that is (a) the earlier of forty-five (45) days from the Petition Date, thirty (30) days after the date of appointment of the committee, if any, or the confirmation of a chapter 11 plan of reorganization and (b) any such later date agreed to in writing by the Administrative Agent or Prepetition Secured Parties in its sole and absolute discretion or as ordered by the Court on any motion by a committee seeking to extent such time period and (ii) an order is enter by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding or contested matter. *See* ¶ 19 |
| **Milestones** Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | In addition to any other dates or milestones set forth in the Interim Order, the following milestones shall be satisfied (the "**Milestones**"); *provided, however*, that the Milestones may be extended or modified without further order of the Court upon prior written consent of the Administrative Agent in its sole and absolute discretion: On or before February 10, 2017: (a) the Debtors shall file a motion (the "**Bid Procedures/Sale Motion**") with the Court seeking approval of (i) a stalking horse purchaser acceptable to the Administrative Agent (the "**Stalking Horse Purchaser**") to purchase all or substantially all of the assets of the Debtors under section 363, (ii) related bid procedures (the "**Bid Procedures**") and the date of an auction (the "Auction"), which shall include an executed purchase and sale agreement by and among the Debtors and the Stalking Horse Purchaser (the "**Stalking Horse Agreement**") and (iii) the sale of substantially all of the Debtors' assets under section 363 and assumption, assignment, and sale of the Contracts. The Bid Procedures/Sale Motion and any related exhibits or supplements and the Stalking Horse Agreement and any related exhibits or supplements shall be in form and substance satisfactory to the Administrative |

| Material Terms | Summary of Material Terms |
|---|---|
| | Agent in its reasonable discretion; and |
| | (b) the Debtors shall file (i) a chapter 11 plan and related disclosure statement and (ii) a motion to approve the adequacy of such disclosure statement, procedures for solicitation of such chapter 11 plan, and scheduling the hearing to consider confirmation of the chapter 11 plan, all of which shall be in form and substance satisfactory to the Administrative Agent in its reasonable discretion. |
| | On or before February 20, 2017: |
| | (a) Each of the Debtors shall filed their respective statement of financial affairs and schedule of assets and liabilities; |
| | On or before March 6, 2017: |
| | (a) the Court shall have entered an order approving the Debtors' selection of a Stalking Horse Purchaser and Bid Procedures (the "**Bid Procedures Order**"), which shall be in form and substance satisfactory to the Administrative Agent in its sole and absolute discretion, and which shall not have been vacated, reversed, modified, amended or stayed; (b) the Debtors shall file with the Court and serve via first class mail on all counterparties to any of the Debtors' executory contracts and unexpired leases and all parties who have requested notice in the chapter 11 cases pursuant to Bankruptcy Rule 2002 a notice of assumption, assignment, and sale listing all of the contracts that the Stalking Horse Purchaser proposed to be assumed, assigned, and sold to it in connection with the sale, which notice shall include the Debtors' calculations of the amounts necessary to cure all monetary defaults for each assumed contract; |
| | On or before March 13, 2017: |
| | (a) if required, the Debtors shall conduct the Auction; |
| | On or before March 16, 2017: |
| | (a) the Court shall enter an order approving the sale of the Debtors' assets under section 363 to the Stalking Horse Purchaser or the successful bidder determined to have made the highest or otherwise best bid for all or substantially all of the assets of the Debtors, which sale order shall be in form and substance satisfactory to the Administrative Agent in its sole and absolute discretion, and which shall not have been vacated, reversed, modified, amended or stayed; and |
| | On or before March 31, 2017: |
| | (a) the Debtors shall have consummated the sale in accordance with the sale order. |
| | *See* ¶ 20. |

## Statement Regarding Significant Provisions

6.       The Interim Order contains certain of the provisions (the "**Significant Provisions**")[5] identified on Exhibit B to the Complex Case Procedures, as set forth below:

a.   **Cross-Collateralization**.  Neither the Interim Order nor the proposed Final Order provide for cross-collateralization, other than replacement liens as adequate protection.

b.   **Validity, Perfection, and Amount of Prepetition Liens and Debt**.  The Debtors acknowledge, agree, admit, and stipulate to various matters, including the amount and validity of the Prepetition Indebtedness and the validity, perfection, and priority of the liens securing such indebtedness.  *See* Interim Order ¶3.  The stipulations set forth in paragraph 3 of the Interim Order are binding on the Debtors and are binding on all other parties in interest for all purposes, subject to the reservation of third party rights in paragraph 19 of the Interim Order.

c.   **Waiver of Claims Against Prepetition Secured Parties**.  Subject to the entry of the Final Order, each of the Debtors and the Debtors' estates waives and releases various parties, including the Lenders, from all Claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights that exist on the date of entry of the Interim Order relating to any of the Prepetition Collateral and any of the Prepetition Loan Documents or the transactions contemplated under such documents.  *See id.* ¶3.  The waivers and releases set forth in paragraph 3 of the Interim Order are binding on the Debtors and shall be binding on all other parties in interest, subject to the reservation of third party rights in paragraph 19 of the Interim Order.

d.   **506(b) Waiver**.  Subject to entry of the Final Order, all rights to surcharge any Prepetition Collateral or Collateral under sections 105 and 506(c) of the Bankruptcy Code or any other applicable principle of equity or law shall be waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Cases.  *See id.* ¶13.

e.   **Liens on Avoidance Actions**.  The proposed Final Order will grant a lien on the proceeds or property recovered in respect of Avoidance Actions.  *See id.* ¶8(b).

---

[5] Significant Provisions refer to those provisions that: (i) grant cross-collateralization protection (other than replacement liens or other adequate protection) to prepetition secured creditors; (ii) deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in section 552(b) of the Bankruptcy Code; (iii) bind the bankruptcy estates or any parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien or debt or the waiver of claims against the secured creditor; (iv) waive or limit the estate's rights under section 506(c) of the Bankruptcy Code; (v) grant prepetition secured creditors liens on the debtor's claims and causes of action arising under chapter 5 of the Bankruptcy Code; (vi) impose deadlines for the filing of a plan or disclosure statement; and (vii) grant an administrative claim.

f. **Provisions Deeming Prepetition Debt to be Postpetition Debt**.  Neither the proposed Interim Order nor the proposed Final Order will deem prepetition secured debt to be postpetition debt.

g. **Provisions Imposing Plan or Disclosure Statement Filing Deadlines**.  The proposed Interim Order contains a Milestone requiring the Debtors to file a chapter 11 plan and accompanying disclosure statement no later than February 10, 2017.  *See id.* ¶20.

h. **Provisions Granting Administrative Claims**.  The Debtors will provide an allowed superpriority administrative claim in the amount of the Diminution, if any, against each of the Debtors on a joint and several basis with priority over all other administrative claims (subject only to the Carve Out), including all claims of the kind specified under sections 503(b) and 507(b) of the Bankruptcy Code, which administrative claim shall have recourse to and be payable from all property of the Debtors.  *See id.* ¶8(a).

7.      As explained below and in the Mosley Declaration (as defined herein), the Debtors' use of Cash Collateral is necessary to avoid immediate and irreparable harm.  The Debtors have determined, in an exercise of their business judgment and following weeks of good-faith, arms' length negotiations, that the Lenders would only consent to the Debtors' use of Cash Collateral if the Interim Order and the Final Order included the foregoing Significant Provisions.  Accordingly, the Debtors submit that the foregoing Significant Provisions are appropriate under the facts and circumstances of the Cases.

## Jurisdiction

8.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

9.      On the date hereof (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors continue

to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

10.    The Debtors are a publicly-traded master limited partnership organized for the purpose of acquiring, developing, and operating midstream energy assets relating to (i) the gathering, transport, and processing of liquid natural gas and (ii) crude oil logistics services.   The Debtors consist of eight operating entities, including Azure Midstream Partners, LP ("**Azure**") and Azure Midstream Partners GP, LLC ("**Azure General Partner**"), and four non-operating entities (collectively, with the operating entities, the "**Company**").   Azure General Partner owns the general partnership interest in Azure.   Approximately 97.7% of all outstanding limited partner interests in Azure are publicly held.   Non-Debtor privately-held affiliate Azure Midstream Energy, LLC ("**AME**") owns all the general partnership interests of Azure General Partner.   AME also owns midstream energy assets, independent of its interests in Azure General Partner, either directly or through its affiliates (AME and such non-Debtor affiliates, collectively, the "**Non-Debtor Affiliate Company**").

11.    Additional information regarding the circumstances leading to the commencement of these chapter 11 cases and information regarding the Debtors' business and capital structure is set forth in the *Declaration of Ed Mosley in Support of the Debtors' Chapter 11 Petitions and Related Requests for Relief* (the "**Mosley Declaration**"), which has been filed contemporaneously herewith.

## The Debtors' Prepetition Indebtedness

*The Credit Agreement and Credit Facility*

12.     The Debtors are parties to that certain Credit Agreement, dated as of February 27, 2015 (as amended from time to time, the "**Prepetition Credit Agreement**" and the senior secured revolving credit facility thereunder, the "**Credit Facility**") by and among Azure, all of its Debtor subsidiaries, as guarantors and the Administrative Agent, as administrative agent, and certain lenders thereto (collectively, the "**Prepetition Secured Parties**").  The Credit Facility initially provided for a total borrowing capacity of up to $250 million, however, as discussed in further detail below, the total borrowing capacity has seen been amended to $173.5 million.  Borrowings under the Credit Agreement bear interest at:  (i) the LIBOR Rate, as defined in the Credit Agreement plus an applicable margin or 3.25% or 4.25%; or (ii) the Base Rate, as defined in the Credit Agreement plus an applicable margin of 2.25% to 3.25%, in each case, based on the Consolidated Total Leverage Ratio, as defined in the Credit Agreement.  The maturity date of the Credit Agreement is February 27, 2018.  The Debtors' obligations under the Credit Agreement are secured by substantially all of the Debtors' assets.  As discussed in further detail below, since October of 2015, to prevent a default under the Credit Agreement, the Debtors have entered into seven limited duration waiver agreements and two amendments to the Credit Agreement.  As of the Petition Date, approximately $173.6 million in unpaid principal, plus accrued and unpaid interest, fees, and other expenses is outstanding under the Credit Agreement (the "**Prepetition Indebtedness**").

*Other Prepetition Debt*

13.     As of the Petition Date, in addition to their secured debt obligations under the Credit Agreement, the Debtors owe approximately $2.2 million in outstanding secured obligations under their various gas gathering agreements.  The Debtors also owe approximately $5.4 million in outstanding unsecured prepetition obligations, which include (i) $440,000 in employee claims, (ii) $688,000 in vendor and trade claims, and (iii) $4.2 million in tax and other priority claims.

### The Debtors' Immediate Need for Access to Cash Collateral

14.     The Debtors require immediate access to liquidity to ensure that they are able to continue operating during these chapter 11 cases, pursue their sale strategy (as discussed in the Mosley Declaration), and to preserve the going concern value of their estates for the benefit of all parties in interest.  Substantially all of the Debtors' total cash on hand as of the Petition Date, approximately $6 million is subject to the liens of the Prepetition Secured Parties and thus constitutes Cash Collateral.  The Debtors have determined that this existing cash, together with cash generated from operations, will be sufficient to operate their businesses and continue paying their debts as they come due during these chapter 11 cases.

15.     Without a prompt grant of authority to use their cash according to these terms, the Debtors will be unable to satisfy trade payables incurred in the ordinary course of business, preserve and maximize the value of their estates, implement their sale process, and administer these chapter 11 cases, which would cause immediate and irreparable harm to the value of the Debtors' estates to the detriment of all stakeholders.  Conversely, immediate access to Cash Collateral will permit the Debtors to continue to operate as they did prepetition while they implement their chapter 11 process.  Accordingly, the use of Cash Collateral in accordance

with the terms of the Interim Order is essential to the Debtors' ability to minimize disruptions and maximize value for their estates and parties in interest.

**<u>The Debtors' Proposed Use of Cash Collateral</u>**

16.     Initially, the Debtors seek authority to use Cash Collateral until February 24, 2017 (if the Final Order has not been entered by the Court on or before such date) (the "**<u>Interim Period</u>**").  During this Interim Period, the Debtors will fund operations as they did prior to the commencement of these cases, as well as the costs of administering their estates, in accordance with the Budget.  Thereafter, the Debtors seek authority to use Cash Collateral in accordance with a Final Order, a proposed form of which will be submitted to the Court before the Final Hearing on this Motion.

17.     In accordance with the negotiated terms reached with the Prepetition Secured Parties, the Debtors have agreed to use Cash Collateral in accordance with the Budget (with permitted Variances).  The Budget includes all reasonable and foreseeable expenses to be incurred by the Debtors for the applicable period, and is designed to provide the Debtors with adequate liquidity over such period.  Prior to the Termination Date, other than with respect to the line item in the Interim Budget for "Agent Professional Fees," the Debtors will be required to adhere to the Budget on a line-by-line basis during the initial four week period set forth in the Budget in effect at such time, *provided, however*, with respect to each line item in the Interim Budget, the Debtors may use Cash Collateral in excess of that set forth in the Interim Budget for that particular item for each Interim Budget Period so long as the percentage deviation for each line item during such Interim Budget Period shall not exceed: (i) 20% with respect to the "Net Receipts" line item; (ii) 10% with respect to the "Operating Disbursements," "Omnibus Disbursements," "Corporate G&A Disbursements," "Tax Disbursements," and "Total Capital

Expenditures" line items; and (iii) 10% with respect to the "Total Restructuring Adjustments" and "Debtor Professional Fees" line items. *See* Interim Order ¶ 5(c). The Debtors will provide the Administrative Agent with Budget-related reporting on a weekly basis and an updated 13-week Budget no later than February 24, 2017, which updated Budget is required to be in form and substance satisfactory to the Administrative Agent in its sole and absolute discretion.

### The Use of Cash Collateral Pursuant to the Consensual Terms of the Interim Order is Warranted and Should Be Approved

18.     The arrangements for the consensual use of Cash Collateral authorized under the Interim Order represent a flexible, interim solution to the Debtors' near-term liquidity needs. The deal with the Prepetition Secured Parties, negotiated and struck in good faith and at arms' length, preserves the status quo while providing the Debtors with sufficient liquidity to fund their businesses and to pursue and consummate a successful sale process. As discussed below and in the Mosley Declaration, the consensual use of Cash Collateral on the terms set forth in the Interim Order is unquestionably the Debtors' best postpetition financing option and the Debtors respectfully request that the Court authorize such use.

*The Use of Cash Collateral Pursuant to the Consensual Terms of the Interim Order is Warranted and Should Be Approved*

19.     A debtor's use of property of the estate, including Cash Collateral, is governed by section 363 of the Bankruptcy Code. Under section 363(c)(2) of the Bankruptcy Code, a debtor may use Cash Collateral if "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code further provides that parties with a security interest in a debtor's Cash Collateral are entitled to adequate protection as a condition to the debtor's use of such assets.

*Id.* § 363(e) ("[O]n request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.").  The Debtors have satisfied the requirements of section 363(c)(2):  the Prepetition Secured Parties have consented to the Debtors' use of Cash Collateral, subject to the terms of the Interim Order, and are adequately protected by the Adequate Protection Package granted therein.

20.     The Bankruptcy Code does not expressly defined "adequate protection" or prescribe a particular form that it must take.  *See In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 696-97 (Bankr. S.D. Tex. 2009) (noting that the Bankruptcy Court "contains no specific, definitive definition of adequate protection.") (citing *In re First S. Sav. Ass'n*, 820 F.2d 700, 710 (5th Cir. 1987)); 11 U.S.C. § 361 (providing a non-exhaustive list of examples of adequate protection, including (i) a lump sum or periodic cash payments; (ii) replacement liens; and (iii) administrative priority claims).  Generally, courts decide what constitutes adequate protection on a case-by-case basis.  *See In re First S. Sav. Ass'n*, 820 F.2d at 710 (noting, with respect to adequate protection, that "[i]ts application is left to the vagaries of each case") (quoting *In re Beker Indus.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)); *Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by cases basis."); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact specific inquiry[.]").

21.     Here, the Debtors intend to provide the Prepetition Secured Parties with adequate protection, which includes (i) granting the Adequate Protection Liens and the 507(b)

Claim and (ii) payment of professional fees and expenses of the Administrative Agent.  *See* Interim Order ¶8.

        22.    Courts in this district and others have approved similar adequate protection packages in recent chapter 11 cases.  *See, e.g. In re Memorial Production Partners, L.P.,* Ch. 11 Case No. 17-30262 (MI) (Bankr. S.D. Tex. Jan. 17, 2017) (Docket. No. 52); *In re Stone Energy Corporation*, Ch. 11 Case No. 16-36390 (MI) (Bankr. S.D. Tex. Dec. 20, 2016) (Docket. No. 138); *In re Sherwin Alumina Co.*, Ch. 11 Case No. 16-20012 (DRJ) (Bankr. S.D. Tex. Sept. 26, 2016) (Dockt. No. 76); *In re LINN Energy, LLC*, Ch. 11 Case No. 16-60040 (DRJ) (Bankr. S.D. Tex. May 13, 2016) (Docket. No. 89); *In re Midstates Petroleum Co.*, Ch. 11 Case No. 16-32237 (DRJ) (Bankr. S.D. Tex. April 15, 2016) (Docket. No. 73); *In re Energy XXI LTD*, Ch. 11 Case No. 16-31928 (DRJ) (Bankr. S.D. Tex. April 15, 2016) (Docket. No. 66); *In re Buccaneer Resources, LLC*, Ch. 11 Case No. 14-60041 (DRJ) (Bankr. S.D. Tex. June 4, 2015) (Docket. No. 42); *see also In re Atlas Resource Partners, L.P.*, Ch. 11 Case No. 15-12149 (SHL) (Docket. No. 42); *In re Paragon Offshore PLC*, Ch. 11 Case No. 16-10386 (CSS) (Bankr. D. Del. Feb. 17, 2016) (Docket. No. 79); *In re Energy & Exploration Partners, Inc.*, Ch. 11 Case No. 15-44931 (RFN) (Bankr. N.D. Tex. Dec. 10, 2015) (Docket. No. 74); *In re Alco Stores, Inc.*, Ch. 11 Case No. 14-34941 (SGJ) (Bankr. N.D. Tex. Oct. 16, 2014) (Docket. No. 67); *In re Reddy Ice Holdings, Inc.*, Ch. 11 Case No. 12-32349 (SGJ) (Bankr. N.D. Tex. April 13, 2012), (Docket. No. 58); *In re Texas Rangers Baseball Partners*, Ch. 11 Case No. 10-43400 (DML) (Bankr. N.D. Tex. May 26, 2010) (Docket. No. 51); *In re Pilgrim's Pride Corp.*, Ch. 11 Case No. 08-45664 (DML) (Bankr. N.D. Tex. Dec. 1, 2008) (Docket. No. 69).[6]

---

[6] Because of the voluminous nature of the orders cited herein, such orders are not attached to this motion.  Copies of these orders are available upon request of the Debtors' proposed counsel.

23.     The Debtors believe that the proposed Adequate Protection Package is necessary and sufficient for the Debtors to continue to use Cash Collateral.  Further, the Prepetition Secured Parties have agreed to the Adequate Protection Package provided in the Interim Order.  Accordingly, the Debtors respectfully request that the Court determine that the Adequate Protection Package is fair and reasonable, necessary to satisfy the requirements of sections 363(c)(2) and 363(e) of the Bankruptcy Code, and in the best interests of the Debtors and their estates.

*The Carve-Out is Appropriate*

24.     In consenting to the use of Cash Collateral, the Prepetition Secured Parties have agreed to subordinate all adequate protection liens and claims to certain fees and expenses required to be paid to (i) the Clerk of the Court and the U.S. Trustee, (ii) any chapter 7 trustee that may be appointed (up to $25,000), and (iii) certain professionals retained by the Debtors or any official committee of unsecured creditors appointed in these Cases that are (x) incurred in accordance with the Budget in effect at such time (subject to Permitted Variances), allowed by this Court and incurred at any time before or on the first business day after the delivery of a Carve-Out Notice, and (y) incurred after the first business day following delivery of a Carve-Out Notice and allowed by the Court or another court of competent jurisdiction in an aggregate amount not exceeding [$____].  *See* Interim Order ¶ 8(c).

25.     The Carve-Out is similar to other provisions of this type, which have been found to be reasonable and necessary to ensure that a debtor's estate and any statutory committee can retain assistance from counsel.  *See Ames Dep't Stores*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990); *see also In re Las Torres Dev., L.L.C.*, 413 B.R. at 694 (noting that a carve out "is often incorporated into a cash collateral order agreed to by the debtor and the secured lender"); *In re*

*Lil' Things, Inc.*, 243 B.R. 278, 280 (N.D. Tex. 2000) (referencing bankruptcy court order acknowledging that carve outs for attorneys' fees are "a normal and enforceable provision in a cash collateral stipulation").

26.     Without the Carve-Out, the Debtors' estates and other parties in interest may be deprived of possible rights and powers because all of the Debtors' assets would be subject to prior security interests. *See Ames Dep't Stores*, 115 B.R. at 38 (observing that courts insist on carve outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). The Carve-Out also protects against the possibility of administrative insolvency by ensuring that assets remain available for the payment of statutory and professional fees.

27.     Courts in this district routinely approve carve out provisions similar to the Carve-Out in connection with a debtor's request to use Cash Collateral. *See, e.g. In re Memorial Production Partners, L.P.,* Ch. 11 Case No. 17-30262 (MI) (Bankr. S.D. Tex. Jan. 17, 2017) (Docket. No. 52); *In re Stone Energy Corporation*, Ch. 11 Case No. 16-36390 (MI) (Bankr. S.D. Tex. Dec. 20, 2016) (Docket. No. 138); *In re Sherwin Alumina Co.*, Ch. 11 Case No. 16-20012 (DRJ) (Bankr. S.D. Tex. Sept. 26, 2016) (Docket. No. 76); *In re LINN Energy, LLC*, Ch. 11 Case No. 16-60040 (DRJ) (Bankr. S.D. Tex. May 13, 2016) (Docket. No. 89); *In re Midstates Petroleum Co.*, Ch. 11 Case No. 16-32237 (DRJ) (Bankr. S.D. Tex. April 15, 2016) (Docket. No. 73); *In re Energy XXI LTD*, Ch. 11 Case No. 16-31928 (DRJ) (Bankr. S.D. Tex. April 15, 2016) (Docket. No. 66); *In re Buccaneer Resources, LLC*, Ch. 11 Case No. 14-60041 (DRJ) (Bankr. S.D. Tex. June 4, 2015) (Docket. No. 42).  Accordingly, the Debtors respectfully request that the Court approve the Carve-Out.

*The Automatic Stay Should Be Modified to a Limited Extent*

28.     The relief requested herein contemplates a modification of the automatic stay to permit the Debtors and each of the Prepetition Secured Parties to perform the transactions and actions contemplated or permitted by the Interim Order.  *See* Interim Order ¶16.  The Interim Order further provides that, upon the occurrence of the Termination Date, the automatic stay will be modified and vacated to the extent necessary to permit the Administrative Agent to exercise the rights and remedies available under the Prepetition Loan Documents, the Interim Order or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Collateral in order to collect any amounts payable to the Prepetition Secured Parties pursuant to the Interim Order.  *See id.* ¶12.

29.     Stay modifications of this kind are typically approved by courts when requested in connection with a debtor's request to use Cash Collateral.  *See, e.g.*, *In re Sherwin Alumina Co.*, Ch. 11 Case No. 16-20012 (DRJ) (Bankr. S.D. Tex. Sept. 26, 2016) (Docket. No. 76) (order approving postpetition financing and use of cash collateral modifying the automatic stay to the extent necessary to effectuate the terms of interim cash collateral order and, upon the occurrence of an event of default, to exercise all rights and remedies provided for in the order and under applicable law); *In re Sandridge Energy, Inc.*, Ch. 11 Case No. 16-32488 (Bankr. S.D. Tex. May 18, 2016) (Docket. No. 84) (same); *In re LINN Energy, LLC*, Ch. 11 Case No. 16-60040 (DRJ) (Bankr. S.D. Tex. May 13, 2016) (Docket. No. 89) (order approving use of cash collateral providing for same); *In re Midstates Petroleum Co.*, Ch. 11 Case No. 16-32237 (DRJ) (Bankr. S.D. Tex. May 2, 2016) (Docket. No. 73) (same); *In re Buccaneer Resources, LLC*, Ch. 11 Case No. 14-60041 (DRJ) (Bankr. S.D. Tex. June 4, 2015) (Docket. No. 42) (same).

30.     Here the stay relief provisions are a reasonable exercise of the Debtors' business judgment and are appropriate under the present circumstances, and, accordingly, the Debtors respectfully request that the Court approve these provisions.

*Interim Relief is Warranted*

31.     Under Bankruptcy Rule 4001(b), the Court may grant interim relief under section 363(c) of the Bankruptcy Code where, as here, such relief is "necessary to avoid immediate and irreparable harm to the estate pending a final hearing."  In evaluating requests for interim relief, courts generally apply the same business judgment standard applicable to other business decisions.  *See, e.g.*, *In re Ames Dep't Stores, Inc.*, 115 B.R. at 40.  Courts in this district routinely authorize debtors to use Cash Collateral on an interim harm to their estates. *See, e.g.*, *In re Stone Energy Corp.*, Ch. 11 Case No. 16-36390 (MI) (Bankr. S.D. Tex. Dec. 20, 2016) (Docket. No. 138) (approving debtors' use of cash collateral on an interim basis); *In re Sherwin Alumina Co.*, Ch. 11 Case No. 16-20012 (DRJ) (Bankr. S.D. Tex. Sept. 26, 2016) (Docket. No. 76) (same); *In re LINN Energy, LLC*, Ch. 11 Case No. 16-60040 (DRJ) (Bankr. S.D. Tex. May 13, 2016) (Docket. No. 89) (same); *In re Midstates Petroleum Co.*, Ch. 11 Case No. 16-32237 (DRJ) (Bankr. S.D. Tex. May 2, 2016) (Docket. No. 73) (same); *In re Energy XXI LTD*, No. 16-31928 (DRJ) (Bankr. S.D. Tex. April 15, 2016) (Docket. No. 66) (same).

32.     Here, the Debtors and their estates will suffer immediate and irreparable harm if the relief requested herein is not granted on an interim basis.  The Debtors have insufficient cash to fund their operations and administer these cases without access to Cash Collateral during the Interim Period.  Accordingly, the Debtors respectfully request that the Court grant the relief requested herein on an interim basis.

*The Court Should Schedule a Final Hearing*

33.     Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court schedule a hearing to consider entry of the Final Order.  The Debtors request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first class mail upon the notice parties listed below and that such notice of the Final Hearing be deemed sufficient under Bankruptcy Rule 4001(b)(3).

### Bankruptcy Rule 6003 Has Been Satisfied

34.     Bankruptcy Rule 6003 provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one days after filing of the petition.  Here, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their business operations.  Any delay in granting the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rules 4001(a)(3) and 6004(h), to the extent such stay applies.

### Notice

35.     No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.  Notice of this Motion will be provided to (i) the Office of the United States Trustee for the Southern District of Texas; (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) Baker & McKenzie LLP, 452 Fifth Avenue, New York, NY 10018 (Attn: James Donnell, Esq. and Peter S. Goodman, Esq.), counsel to Wells

Fargo Bank, N.A., as Administrative Agent; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; and (vi) the United States Attorney's Office for the Southern District of Texas.  The Debtors submit that no other or further notice need be provided.

## No Previous Request

36.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Interim Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 30, 2017
        Houston, Texas

/s/Christopher M. López
Christopher M. López (24041356)
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email: chris.lopez@weil.com

-and-

Gary T. Holtzer (*pro hac vice* pending)
Robert J. Lemons (*pro hac vice* pending)
Charles M. Persons (*pro hac vice* pending)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Email:  gary.holtzer@weil.com
Email:  robert.lemons@weil.com
Email:  charles.persons@weil.com

*Proposed Attorneys for the Debtors*
*and Debtors in Possession*

## Exhibit A

**Proposed Interim Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|   |   |   |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **AZURE MIDSTREAM** | § | **Case No. 17-[_____] (___)** |
| **PARTNERS, LP**, *et al.*, | § | |
| | § | **Joint Administration Requested** |
| | § | |
| Debtors.[1] | § | Re: Docket No.__ |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363,
AND 507, FED. R. BANKR. P. 2002, 4001, 6003, 6004, AND 9014, AND
BANKRUPTCY LOCAL RULE 4001-1 (I) AUTHORIZING DEBTORS' LIMITED
USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION
TO THE PREPETITION SECURED PARTIES, (III) MODIFYING THE
AUTOMATIC STAY, AND (IV) SCHEDULING A FINAL HEARING**

Azure Midstream Partners, LP, and its subsidiaries and certain affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, these "**Cases**"), pursuant to sections 105, 361, 362, 363 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 4001-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the Procedures for Complex Chapter 11 Bankruptcy Cases (the "**Complex Case Procedures**") promulgated by the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"), seeking, among other things:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are:  Azure ETG, LLC. (3388), Azure Holdings GP, LLC (0537), Azure Midstream Partners GP, LLC (8089), Azure Midstream Partners, LP (7595), Azure TGG, LLC (6233), Marlin G&P I, LLC (6073), Marlin Logistics, LLC (8460), Marlin Midstream Finance Corp. (0130), Marlin Midstream, LLC (2587), Murvaul Gas Gathering, LLC (0826), Talco Midstream Assets, Ltd. (7004), and Turkey Creek Pipeline, LLC (1161).

(a)     authorization for the Debtors, pursuant to sections 105, 361, 362, 363, and 507 of the Bankruptcy Code to (i) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**"), and all other Prepetition Collateral (as defined herein), in accordance with the terms of this interim order (this "**Interim Order**") (including in the amount and in the manner set forth in the Interim Budget), and (ii) provide adequate protection to Wells Fargo Bank, National Association, as Administrative Agent (the "**Prepetition Agent**"), issuing lender, and swingline lender, under the Prepetition Credit Agreement (as defined herein), and the other Prepetition Secured Parties (as defined herein);

(b)     upon entry of a Final Order (as defined below), and except to the extent of the Carve-Out (as defined herein), authorization to grant adequate protection liens on the proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, 549, and 550 Bankruptcy Code, or any other similar state or federal law (collectively, the "**Avoidance Actions**");

(c)     modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and the Final Order, and authorization for the Prepetition Agent to exercise remedies under the Prepetition Loan Documents and this Interim Order upon the occurrence and during the continuation of a Termination Event (as defined herein);

(d)     subject to entry of the Final Order, except to the extent of the Carve-Out, the waiver of all rights to surcharge any Prepetition Collateral or Collateral (as defined herein) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(e)     that this Court hold an interim hearing (the "**Interim Hearing**") to consider the relief sought in the Motion and entry of the proposed Interim Order;

(f)     that this Court schedule a final hearing (the "**Final Hearing**") to consider entry of a final order (the "**Final Order**") granting the relief requested in the Motion on a final basis;[2] and

(g)     waiver of any applicable stay with respect to the effectiveness and enforceability of the Interim Order or the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h));

and pursuant to Bankruptcy Rule 4001, Bankruptcy Local Rule 4001-1, and the Complex Case

Procedures, notice of the Motion and the relief sought at the Interim Hearing having been given

---

[2] The Debtors and the Prepetition Agent remain in discussions with respect to a budget permitting use of Cash Collateral after February 24, 2017.

by the Debtors to the Prepetition Agent, counsel to the Prepetition Agent, the other Prepetition Secured Parties, counsel to the Debtors' proposed Stalking Horse Purchaser (as such term is defined herein), the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**"), the United States Securities and Exchange Commission, the United States Internal Revenue Service, Office of the United States Attorney for the Southern District of Texas, and otherwise as set forth in the Motion; and the Court having held the Interim Hearing on _____, 2017; and the Court having considered the *Declaration of Ed Mosley in Support of the Debtors' Chapter 11 Petitions and Related Requests for Relief* filed on the Petition Date, and the record of the Interim Hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and due deliberation and good cause having been shown to grant the relief sought in the Motion,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *The Motion*. The Motion is granted on an interim basis as set forth herein.

2.      *Petition Date and Jurisdiction*. This Court has core jurisdiction over the Cases commenced on January 30, 2017 (the "**Petition Date**"), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Cases.

3.      *Debtors' Stipulations*.  Without prejudice to the rights of any other party, the Debtors admit, stipulate, and agree that:

(a)     Prior to the Petition Date, the Prepetition Secured Parties made certain loans and other financial accommodations pursuant to and in accordance with the terms and conditions of that certain Credit Agreement, dated as of February 27, 2015 (as amended, restated, or otherwise modified from time to time, the "**Prepetition Credit Agreement**," and, together with all other documentation executed in connection therewith, including without limitation, the Prepetition Collateral Documents (as such terms are defined herein), the "**Prepetition Loan Documents**"), among, *inter alia*, Azure Midstream Partners, LP (the "**Borrower**"), as borrower, each of the other Debtors as guarantors, the Prepetition Agent, and the lenders from time to time party thereto (such lenders, the "**Prepetition Secured Lenders**," and, together with the Prepetition Agent, collectively, the "**Prepetition Secured Parties**").

(b)     As of the Petition Date, the Debtors were indebted and liable, without defense, counterclaim, or offset of any kind, to the Prepetition Secured Lenders in the aggregate principal amount of approximately $173,661,626.46, plus accrued and unpaid interest (including at applicable default rates), fees, costs, expenses, and disbursements including, without limitation, attorney's fees, agent's fees, other professional fees, premiums, letters of credit obligations, swap obligations, reimbursement obligations, indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations pursuant to the Prepetition Loan Documents (collectively, the "**Prepetition Indebtedness**").  The Prepetition Loan Documents are valid, binding, and, subject to applicable bankruptcy law, enforceable against the Debtors in accordance with their terms.

(c)     The Prepetition Indebtedness constitutes the legal, valid and binding obligations of the Debtors, their estates and any successors thereto, enforceable, subject to applicable bankruptcy law, in accordance with its terms, and no portion of the Prepetition Indebtedness or any amounts paid to the Prepetition Secured Parties or applied to the obligations owing under the Prepetition Loan Documents prior to the Petition Date is subject to avoidance, subordination (whether equitable or otherwise), recharacterization, recovery, attack, offset, contest, objection, recoupment, reclassification, reduction, disallowance, counterclaim, defense, challenge or Claim (as defined in section 101(5) of the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code  or applicable non-bankruptcy law, and neither the Debtors nor their estates have any claims, counterclaims, causes of action, defenses or setoff rights related to the Prepetition Indebtedness, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, on or prior to the date hereof, against the

Prepetition Agent, any of the other Prepetition Secured Parties, or their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys, and advisors.

(d)     Pursuant to that (a) certain Security Agreement, dated as of February 27, 2015 (as heretofore amended, restated, or otherwise modified from time to time) by the Borrower and the Grantors (as defined in the Prepetition Credit Agreement) in favor of the Prepetition Agent, and (b) certain security documents, including, without limitation, deposit control account agreements, mortgages, deeds of trust and pledge agreements, entered into by one or more of the Borrower and the Grantors in connection with the Security Agreement and the Prepetition Loan Documents (each of (a) and (b) as heretofore amended, restated or otherwise modified from time to time, and, collectively with any and all other agreements, instruments, certificates, fixture filings, transmitting utility filings, financing statements, consents, assignments or other similar documents, the "**Prepetition Collateral Documents**"), subject only to specific permitted exceptions in the Prepetition Credit Agreement and the other Prepetition Loan Documents, the Debtors granted, and the Prepetition Agent, for the benefit of the Prepetition Secured Parties, possesses, valid, binding, perfected and enforceable first priority liens upon, and security interests in, all right, title and interest in, to and under all personal property and other assets, whether now owned by or owing to, or hereafter acquired by or arising in favor of the Grantors (including, without limitation, under any trade names, styles or derivations thereof), and whether owned or consigned by or to, or leased from or to, such Grantor, and regardless of where located including, without limitation, all accounts; all chattel paper (whether tangible chattel paper or electronic chattel paper); all documents; all general intangibles (including, without limitation, payment intangibles and software); all goods (including, without limitation, inventory, equipment and fixtures); all computer hardware and software and all rights with respect thereto, including, without limitation, any and all licenses, options, warranties, service contracts, program services, test rights, maintenance rights, support rights, improvement rights, renewal rights and indemnifications, and any substitutions, replacements, additions or model conversions of any of the foregoing; all instruments; all investment property; all deposit accounts, and all other bank accounts and all deposits therein; all money, cash or cash equivalents; all supporting obligations and letter of credit rights; all crude oil, natural gas, natural gas liquids, and natural gas in transit; all pipeline tickets, pipeline nominations, pipeline statements and pipeline tender letters; all books, records, writings, data bases, information and other property relating to, used or useful in connection with, or evidencing, embodying, incorporating or referring to any of the foregoing; any money, cash, cash equivalents or other income, or any

5

other type of proceeds, generated by the sale or other transfer of any real property; and to the extent not otherwise included, all proceeds, tort claims, insurance claims and other rights to payments not otherwise included in the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing (collectively, including the Cash Collateral and the setoff rights described in the Prepetition Loan Documents, the Swap Agreements (as defined in the Prepetition Credit Agreement), or arising by operation of law, the "**Prepetition Collateral**") to secure the Prepetition Indebtedness.  As of the Petition Date, there were no security interests in or liens on the Prepetition Collateral other than as permitted by the Prepetition Loan Documents.

(e) The Prepetition Agent's first priority liens upon, and security interests in, the Prepetition Collateral, for the ratable benefit of the Prepetition Secured Parties, are not subject to avoidance, subordination (whether equitable or otherwise), recharacterization, recovery, attack, offset, contest, objection, recoupment, reclassification, reduction, disallowance, counterclaim, defense, challenge or Claim (as defined in section 101(5) of the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code  or applicable non-bankruptcy law.

(f) To the extent of the Prepetition Secured Parties' respective security interests in such Prepetition Collateral, all cash, including, without limitation, all cash proceeds, products, offspring, rents and profits of the Prepetition Collateral held in any of the Debtors' banking, checking or other deposit accounts with financial institutions as of the Petition Date or deposited into the Debtors' banking, checking or other deposit accounts with financial institutions after the Petition Date (including, without limitation, deposits into accounts opened before or after the Petition Date), are Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

(g) Pursuant to sections 105, 361, 362, and 363(e) of the Bankruptcy Code, the Prepetition Secured Parties are entitled to adequate protection of their interest in the Prepetition Collateral, including the Cash Collateral, for any Diminution (as defined herein).

4. *Findings Regarding the Use of Cash Collateral and the Prepetition Collateral.*

(a) Good cause has been shown for the entry of the Interim Order.

(b) The Debtors need to continue to use the Prepetition Collateral, to, among other things, conduct their business operations, generate revenue and preserve the going concern value of the Debtors.  The Debtors have an immediate need to use the Cash Collateral to, among other things, preserve and maintain the going concern value of the

Debtors, absent which immediate and irreparable harm will result to the Debtors, their estates and their creditors.

(c)     The terms of the use of the Prepetition Collateral pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.  The use of the Prepetition Collateral in accordance with the Interim Order is in the best interest of the Debtors' estates.

(d)     The terms of the use of the Prepetition Collateral pursuant to the Interim Order have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors and the Prepetition Agent, and pursuant to sections 105, 361, and 363 of the Bankruptcy Code the Prepetition Agent, on behalf of all of the Prepetition Secured Parties, is hereby found to be have acted in "good faith" in connection with the negotiation and entry of the Interim Order, and (including all of the Prepetition Secured Parties) is entitled to the protection provided under section 363(m) of the Bankruptcy Code.

5.     *Authorization of Use of Cash Collateral and Prepetition Collateral.*

(a)     The Debtors are hereby authorized to use the Prepetition Collateral, through and including the Termination Date (as defined herein) solely for the purposes and the amounts set forth in the Interim Budget (as defined below), including (i) conducting their operations and generating revenue in the Cases, subject to the terms hereof; (ii) other general corporate purposes; (iii) satisfaction of the costs and expenses of administering the Cases, including payment of prepetition obligations that are necessary to preserve the value of the estates, as further described in each of the Debtors' first day motions; and (iv) adequate protection payments to the Prepetition Agent and the Prepetition Secured Parties, as provided herein.

(b)     Subject to the terms and conditions of this Interim Order, the Court hereby authorizes the Debtors' use of Cash Collateral during the interim period beginning with the Petition Date and ending on the Termination Date, solely and exclusively for the disbursements set forth in the budget attached as **Exhibit A** hereto and incorporated by reference herein (as such budget may be modified from time-to-time in the sole and absolute discretion of the Prepetition Agent, the "**Interim Budget**"), and for no other purposes.

(c)     Other than with respect to the line item in the Interim Budget for "Agent Professional Fees", the Debtors shall adhere to the Interim Budget on a line-by-line basis during the initial four-week period set

7

forth in the Interim Budget (such initial four-week period, the "**Interim Budget Period**"), with no carry-over surplus to any other line item(s), except to the extent agreed to in writing as set forth herein; *provided, however*, that with respect to each line item in the Interim Budget, the Debtors may use Cash Collateral in excess of that set forth in the Interim Budget for that particular line item for each Interim Budget Period so long as the percentage deviation ("**Permitted Variances**") for each line item listed below during such Interim Budget Period shall not exceed:

(1)     Twenty percent (20%) with respect to the "Net Receipts" line item under the "Receipts" section of the Interim Budget actually received by the Debtors during the four-week period immediately preceding the Testing Date (the "**Testing Period**");

(2)     Ten percent (10%) with respect to the "Operating Disbursements", "Omnibus Disbursements", "Corporate G&A Disbursements", "Tax Disbursements", and "Total Capital Expenditures" line items under the "Operating Disbursements" section of the Interim Budget actually disbursed by the Debtors during the Testing Period; and

(3)     Ten percent (10%) with respect to the "Total Restructuring Adjustments" and "Debtor Professional Fees" line items under the "Restructuring Adjustments" section of the Interim Budget actually disbursed by the Debtors during the Testing Period.

For purposes herein, "**Testing Date**" shall mean the last Business Day of every week commencing on Friday, February 10, 2017.

(d)     The Prepetition Agent may, in its sole discretion, agree in writing to the use of Cash Collateral in a manner or amount which does not conform to the Interim Budget (other than Permitted Deviations and the Line Item Carry Forward) (each such use of Cash Collateral, a "**Non-Conforming Use**").   If such written consent is given, the Debtors shall be authorized pursuant to this Interim Order to use Cash Collateral for any such Non-Conforming Use without further Court approval, and the Prepetition Secured Parties shall be entitled to all of the protections specified in this Interim Order for any such use of Cash Collateral. The Debtors shall provide notice of any Non-Conforming Use to the U.S. Trustee, and to counsel to the official committee of unsecured creditors, if any.

(e)     The Prepetition Secured Parties shall have no obligation with respect to the Debtors' use of the Cash Collateral, and shall not be obligated to

ensure or monitor the Debtors' compliance with the Interim Budget or to pay (directly or indirectly from the Cash Collateral) any expenses incurred or authorized to be incurred pursuant to the Interim Budget. Any and all Cash Collateral shall be used by the Debtors solely and exclusively in accordance with the Interim Order and the Interim Budget (subject to the Permitted Variances and any Non-Conforming Use) and for no other purpose.  The consent of the Prepetition Agent to the Interim Budget shall not be construed as consent to the use of any Cash Collateral after the Termination Date (other than with respect to the Carve-Out), regardless of whether the aggregate funds shown on the Interim Budget have been expended.

6.      *Consent and Indemnification of the Prepetition Secured Parties.* The Prepetition Agent, on behalf of the Prepetition Secured Parties, consents to the Debtors' use of the Prepetition Collateral, in accordance with and subject to the terms and conditions contained in the Interim Order.  The Debtors agree to indemnify and hold the Prepetition Agent and each of the Prepetition Secured Lenders harmless from and against any liabilities, losses, claims, damages, penalties, judgments, costs or expenses that the Prepetition Agent may suffer or incur for any actions taken in connection with the Interim Order or any relief granted herein; *provided*, *however*, that the Debtors shall not indemnify and hold the Prepetition Agent harmless to the extent that any such actions are the result of gross negligence, bad faith, or willful misconduct on the part of the Prepetition Agent.  For the avoidance of doubt, this provision in no way limits any indemnification obligations of the Debtors under any of the Prepetition Loan Documents.

7.      *Entitlement to Adequate Protection*.   The Prepetition Agent and the other Prepetition Secured Parties are entitled, pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including Cash Collateral, in an amount equal to the aggregate diminution or other decline in value, if any, of the Prepetition Secured Parties' interest in the Prepetition Collateral (including the Cash Collateral) from and after the Petition Date for any reason, including from the use, sale, or lease by the Debtors of the Prepetition Collateral and the imposition of the automatic stay pursuant to

section 362 of the Bankruptcy Code (such diminution in value, the "**Adequate Protection Obligations**" or the "**Diminution**").  Notwithstanding anything to the contrary herein, the Prepetition Agent and the Prepetition Secured Parties are not receiving any adequate protection of their interests in the Prepetition Collateral pursuant to the Interim Order in an amount over and above the amount equal to the Diminution.

       8.    *Adequate Protection Claims and Liens*.  As adequate protection, the Prepetition Secured Parties are hereby granted the following claims, liens, rights and benefits:

      (a)    <u>Section 507(b) Claim</u>. The Adequate Protection Obligations due to the Prepetition Secured Parties shall constitute joint and several superpriority claims in the amount of the Diminution, if any, against the Debtors as provided in section 507(b) (and section 503(b)) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c), 546(c) (subject to entry of the Final Order), 507(a), 507(b), 726, 1113 or 1114, and shall at all times be senior to the rights of the Debtors and any successor trustee or any creditor in the Cases or any subsequent proceedings under the Bankruptcy Code (the "**507(b) Claim**"), subject and subordinate only to the Carve-Out (as defined in paragraph 8(c) below).

      (b)    <u>Adequate Protection Liens</u>. As security for the Adequate Protection Obligations, effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Prepetition Agent of any Adequate Protection Collateral (as defined below), the following security interests and liens are hereby granted to the Prepetition Agent for the benefit of the Prepetition Secured Parties for and to the extent of the Diminution, if any (all property identified in clauses (1), (2), and (3) below being collectively referred to as the "**Adequate Protection Collateral**"), subject only to the Carve-Out (all such liens and security interests, the "**Adequate Protection Liens**"):

      (1)    <u>Liens Junior to Certain Existing Liens</u>.  Valid, binding, continuing, enforceable, fully-perfected non-voidable junior priority replacement liens on, and security interests in, all tangible and intangible assets, including without limitation, all prepetition and postpetition property of the Debtors' estates, and all products and

proceeds thereof, whether now existing or hereafter acquired (other than the property described in clause (b)(2) of this paragraph 8), that are subject to (x) valid, perfected and unavoidable liens in existence as of the Petition Date or (y) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Prepetition Agent;

(2)   <u>Liens Senior to Certain Existing Liens</u>.  Valid, binding, continuing, enforceable, fully-perfected non-voidable priming liens on, and security interest in, the Prepetition Collateral and all of the Debtors' tangible and intangible assets, all prepetition and postpetition property of the Debtors' estates, whether now existing or hereafter acquired, including without limitation, all products and proceeds thereof, whether arising from section 552 of the Bankruptcy Code or otherwise, and, subject to the entry of a Final Order, the proceeds of avoidance actions under chapter 5 of the Bankruptcy Code (including assets as to which liens are avoided), and including, without limitation, all chattel paper (whether tangible chattel paper or electronic chattel paper); all documents; all general intangibles (including payment intangibles and software); all goods (including inventory, equipment and fixtures); all computer hardware and software and all rights with respect thereto, including, any and all licenses, options, warranties, service contracts, program services, test rights, maintenance rights, support rights, improvement rights, renewal rights and indemnifications, and any substitutions, replacements, additions or model conversions of any of the foregoing; all instruments; all investment property; all deposit accounts, and all other bank accounts and all deposits therein; all money, cash or cash equivalents; all supporting obligations and letter of credit rights; all crude oil, natural gas, natural gas liquids, and natural gas in transit; all pipeline tickets, pipeline nominations, pipeline statements and pipeline tender letters; all books, records, writings, data bases, information and other property relating to, used or useful in connection with, or evidencing, embodying, incorporating or referring to any of the foregoing; any money, cash, cash equivalents or other income, or any other type of proceeds, generated by the sale or other transfer of any real property; and to the extent not otherwise included, all proceeds, tort claims, insurance claims and other rights to payments not otherwise included in the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing; *provided that* such liens and security interests shall not prime (x) any valid, perfected and

11

unavoidable senior liens and security interests in existence as of the Petition Date that are held by or granted to any person other than the Prepetition Agent or (y) valid and unavoidable senior liens and security interests in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code and that are held by or granted to any person other than the Prepetition Agent.  For the avoidance of doubt, Adequate Protection Liens shall not be subject to or *pari passu* with any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor.

    (3)    <u>Certain Mortgaged Properties Excluded</u>. Notwithstanding anything herein to the contrary, for the avoidance of doubt, except as otherwise expressly agreed to by the Prepetition Agent, no Building (as defined in applicable Flood Insurance Regulations (as such term is defined herein) that is located in a Special Flood Hazard Area (as defined in the applicable Flood Insurance Regulations) shall be included in the mortgaged properties or be encumbered for the benefit of the Prepetition Secured Parties as part of the Adequate Protection Collateral, unless such Building is covered by flood insurance obtained by the Borrower or a Grantor in an amount as required by the applicable Flood Insurance Regulations.  For purposes hereof, "**Flood Insurance Regulations**" shall mean (i) the National Flood Insurance Act of 1968 as now or hereafter in effect or any successor statute thereto, (ii) the Flood Disaster Protection Act of 1973 as now or hereafter in effect or any successor statute thereto, (iii) the National Flood Insurance Reform Act of 1994 (amending 42 USC §4001, et seq.), as the same may be amended or recodified from time to time, and (iv) the Flood Insurance Reform Act of 2004 and any regulations promulgated thereunder.

    (4)    <u>Status of the Adequate Protection Liens</u>. The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any lien or security interest arising after the Petition Date, subject to the Carve-Out, or ((ii) except as otherwise set forth in clauses (1) and (2) of this paragraph 6, subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

(c)    For purposes hereof, the "**Carve-Out**" shall mean the following: (i) all statutory fees required to be paid by the Debtors to the Clerk of the Court and to the Office of the U.S. Trustee in such amounts as agreed to by the U.S. Trustee or as determined by order of the Court under section 1930(a)

of title 28 of the United States Code (irrespective of whether the Carve-Out Notice (as defined below in this paragraph) has been delivered); (ii) the reasonable fees and expenses up to $25,000 incurred by a trustee appointed in the Debtors' cases under section 726(b) of the Bankruptcy Code (irrespective of whether the Carve-Out Notice has been delivered); (iii) all Court-approved, accrued and unpaid reasonable fees, disbursements, costs, and expenses (the "**Professional Fees**") incurred by professionals or professional firms retained by the Debtors or their estates pursuant to section 327 or 328 of the Bankruptcy Code and any statutory committee (the "**Committee**") appointed in the Cases pursuant to section 1103 of the Bankruptcy Code (collectively, the "**Professionals**"), which Professional Fees (x) are incurred in accordance with the Budget in effect at such time (subject to the Permitted Variances and any Non-Conforming Use), (y) are allowed by this Court at any time and (z) were incurred (regardless of when invoiced or applied for) at any time before or on the first business day following delivery by the Prepetition Agent to counsel to the Debtors, the U.S. Trustee, and counsel to any Committee (if any) of a written notice (via electronic mail, overnight delivery or hand delivery) (the "**Carve-Out Notice**"), which notice may be delivered at any time following the occurrence of the Termination Date or a Termination Event (as defined in paragraph 11 below), stating that the Termination Date has occurred or a Termination Event has occurred; and (iv) the Professional Fees allowed by this Court or another court of competent jurisdiction in an aggregate amount not exceeding [$_____], which Professional Fees are incurred by the Professionals after the first business day following delivery by the Prepetition Agent of the Carve-Out Notice in accordance with the immediately preceding clause (iii); *provided that*: (x) subject to the Debtors' right to raise issues with respect to the occurrence of a Termination Event as further described in paragraph 17 below, the Carve-Out shall not be available to pay any Professional Fees incurred by any party, including the Debtors or the Committee (if any) or any Professionals engaged thereby, in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Prepetition Agent or Prepetition Secured Parties and it being understood that up to an aggregate of $25,000 shall be made available to the Committee (if any) for investigation costs, as described in paragraph 19 below; (y) so long as a Carve-Out Notice has not been delivered, the Carve-Out shall not be reduced by the payment of Professional Fees allowed at any time by this Court and payable under sections 328, 330, and 331 of the Bankruptcy Code; *provided*, *however*, that any payment or reimbursement made after the delivery of a Carve-Out Notice in respect of allowed Professional Fees (exclusive of the application of any retainers by any of the Professionals) shall permanently reduce the Carve-Out on a dollar-for-dollar basis, and (z) without prejudice to the rights of the Professionals or the Debtors to contest any such objection, nothing in this Interim Order shall be construed to impair

the ability of any party to object to any fees, expenses, reimbursements, or compensation sought by any such Professionals, including the Prepetition Agent.

9.   *Additional Adequate Protection.*  As additional adequate protection to the

Prepetition Secured Parties:

>   (a)   <u>Fees and Expenses</u>: The Debtors are authorized and directed to pay, in accordance with this paragraph, within two (2) business days following ten (10) days after delivery of an invoice describing in summary detail (redacted for privilege and work product and other confidential or proprietary information) reasonable and documented fees, costs and expenses in accordance with the Prepetition Credit Agreement, including those incurred or accrued either prior to or after the Petition Date by the Prepetition Agent, the reasonable fees and documented expenses of Baker & McKenzie LLP, RPA Advisors, LLC and any other professionals or advisors retained by or on behalf of the Prepetition Agent.  None of the fees, costs, expenses or other amounts payable pursuant to this paragraph shall be subject to separate approval by this Court or subject to the U.S. Trustee fee guidelines (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto; *provided that* the Debtors or counsel for the Prepetition Agent shall submit copies of the Prepetition Agent's legal counsel and financial advisor invoices to the U.S. Trustee and the Committee (if any), and the Debtors, the U.S. Trustee, and the Committee, shall have ten (10) days following their receipt of such invoices to object to the reasonableness of the fees and expenses included in any such invoice. If any such objection is not resolved within ten (10) days after such objection is interposed, a hearing with respect thereto shall be conducted at a regularly-scheduled omnibus hearing in the Cases, *provided that* the Debtors shall pay any undisputed portion of such fees, costs and expenses as soon as practicable following fifteen (15) days after the initial presentment to the Debtors of such invoice.

>   (b)   <u>Other Covenants</u>: The Debtors shall maintain all Cash Collateral in existing accounts with the Prepetition Agent subject to deposit account control agreements and their cash management arrangements in a manner consistent with the order described in the *Emergency Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Continue Existing Cash Management System, (B) Maintain Existing Business Forms and Bank Accounts, and (C) Continue Certain Intercompany Arrangements;  (II) Waiving Requirements of Section 345(b) of the Bankruptcy Code; and (III)*

*Granting Related Relief Pursuant to Sections 105(a), 345(b), 363(b)(1), and 363(c)(1) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004* (the "**Cash Management Order**"), entered or to be entered substantially contemporaneously with the Interim Order, which shall be in form and substance reasonably acceptable to the Prepetition Agent.

(c)    Unless otherwise agreed to by the Prepetition Agent in writing, all sales, transfers, exchanges and other dispositions (including casualty and condemnation events) of Prepetition Collateral shall be in exchange for 100% cash consideration, and (i) the greater of: (x) 85% of the net proceeds and (y) net proceeds less $22.5 million of any such sale, transfer, exchange, or other disposition or (ii) any lesser amount that the Debtors and Prepetition Agent may mutually agree upon shall, upon consummation of such sale, transfer, exchange, or disposition, be deposited in an account of the Debtors held with the Prepetition Agent and shall be applied immediately by the Prepetition Agent to reduce permanently the Prepetition Indebtedness, without further order of this Court, *provided that* (i)(y) of this section shall only be applicable in the case of a sale of all or substantially all assets.  For the avoidance of doubt and notwithstanding anything herein to the contrary, any proceeds not immediately applied to permanently reduce the Prepetition Indebtedness shall remain Prepetition Collateral and Adequate Protection Collateral subject to the Prepetition Secured Parties' first priority prepetition liens and the Adequate Protection Liens.

(d)    The Debtors shall not use, sell or lease any material assets outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without prior consultation with the Prepetition Agent at least five (5) business days prior to the date on which the Debtors seek the authority of this Court for such use, sale, or lease.

(e)    <u>Reporting</u>: The Debtors shall comply with the reporting requirements set forth in the Prepetition Credit Agreement, and shall provide the following additional reporting to the Prepetition Agent and, subject to appropriate confidentiality provisions, the Committee (if any):

    (1)    Weekly (or more or less frequently as may be agreed to between the Debtors and the Prepetition Agent) calls with the Prepetition Agent and its advisors, including with respect to the sale process and any other material issues or developments;

    (2)    Within one (1) day of receipt, delivery of all material information relating to the sale process including bids, letters or indications of interest, term sheets, purchase

15

agreements, or any other agreements, documents, or information relating to the sale process;

(3)    Presentations by the Debtors and/or their advisors during normal business hours to the Prepetition Agent and/or Prepetition Secured Parties at times and places as the Prepetition Agent may reasonably request in writing (including via electronic mail) with reasonable prior notice;

(4)    On Friday of each calendar week, commencing on Friday, February 10, 2017, a variance report (a "**Variance Report**") comparing, on a line item basis, actual results for the previous individual week and cumulative weeks to the amounts set forth in the Budget in effect at such time for such previous week and since the last approved Budget, in form and substance satisfactory to the Prepetition Agent. Each material variance shall be accompanied by a qualitative explanation. Each Variance Report shall include an accounting of the amount of unencumbered cash as of the end of the previous week;

(5)    A detailed reconciliation of any disbursements from the Omnibus Disbursements category of the Budget in effect at such time, in form and substance satisfactory to the Prepetition Agent, shall be provided within five (5) business days of any such omnibus disbursements;

(6)    No later than two (2) days prior to a hearing to approve the entry of a Final Order, an updated 13-week Budget (the "**Final Budget**"), which updated Final Budget shall be in form and substance reasonably satisfactory to the Prepetition Agent in its sole and absolute discretion;

(7)    A monthly and year-to-date income statement, balance sheet and report of capital expenditures (beginning with the year-to-date period ended February 2017) for the Debtors to be provided as soon as available, but in any event no later than the thirtieth (30th) day of the following month; and

(8)    Such other reports and information as the Prepetition Agent may reasonably request, including, without limitation, information relating to the Debtors' operations, assets and liabilities, contracts and commitments, projections and plans, third-party reports and analyses, any lien/mortgage analysis or information relating thereto, and access to any

data room established by the Debtors and all information contained therein.

(f)   Access to Records: In addition to, and without limiting, whatever rights to access the Prepetition Secured Parties have under the Prepetition Loan Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents and employees of the Prepetition Agent (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors' books and records, and (iii) to discuss  the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors.

10.   *Postpetition Lien Perfection*. Without the necessity of the filing of financing statements, security agreements, federal or state notices, pledge agreements, intellectual property filings, deeds of trust, recordings, mortgages or other documents or instruments or taking possession or control of any Prepetition Collateral or entering into any deposit account control agreements, the Interim Order shall be sufficient evidence of the Prepetition Secured Parties' perfected security interests and liens granted in the Prepetition Collateral pursuant to the Interim Order.  Notwithstanding the foregoing, the Debtors are authorized to, and shall, upon reasonable request of the Prepetition Agent, execute such documents including, without limitation, mortgages, pledges and financing statements and to use Cash Collateral to pay such costs and expenses as may be reasonably requested by the Prepetition Agent to provide further evidence of the perfection of the Prepetition Secured Parties' security interests and liens in the Prepetition Collateral as provided for herein.  The Prepetition Agent is hereby authorized, but not required, to file or record such documents in any jurisdiction in order to validate the liens and security interests granted to the Prepetition Agent, for the benefit of the Prepetition Secured Parties under the Interim Order, and the automatic stay shall be hereby modified to allow such filings.  A certified copy of the Interim Order may, in the discretion of the Prepetition Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing

statements, security agreements, federal or state notices, pledge agreements, intellectual property filings, deeds of trust, recordings, mortgages, or other documents or instruments, and all filing offices are hereby authorized and directed to accept such certified copy of the Interim Order for filing and recording.  All such documents recorded and filed in accordance with this paragraph shall be deemed to have been recorded and filed as of the Petition Date notwithstanding the date of any such recording or filing.

11.     _Termination_. The Debtors' right to use the Cash Collateral pursuant to the Interim Order shall terminate (the date of any such termination, the "**Termination Date**") without further notice or court proceeding on the earliest to occur of: (i) February 24, 2017 if the Final Order (with an updated 13-week Final Budget), which updated Final Budget shall be in form and substance satisfactory to the Prepetition Agent in its sole and absolute discretion) has not been entered by this Court on or before such date or (ii) the occurrence of any of the events set forth in clauses (a) through (m) below (unless waived by the Prepetition Agent in its sole and absolute discretion) (collectively, the "**Termination Events**"):

(a)     (i) The entry of an order or (ii) the filing of a motion by any of the Debtors seeking entry of an order dismissing these Cases or converting these Cases to cases under chapter 7 of the Bankruptcy Code;

(b)     (i) The appointment or election of, or (ii) the filing of a motion by any of the Debtors seeking the appointment or election of, a trustee, examiner with expanded powers, or any other representative with expanded powers relating to the operation of the businesses in the Cases;

(c)     The occurrence of the effective date or consummation date of a chapter 11 plan for the Debtors;

(d)     The failure by the Debtors to make any payment required pursuant to the Interim Order when due;

(e)     The failure by the Debtors to deliver to the Prepetition Agent any of the documents or other information required to be delivered pursuant

18

to this Interim Order within one (1) business day when due or any such documents or other information shall contain a material misrepresentation;

(f)      The failure by the Debtors to adhere to the Interim Budget subject to Permitted Variances or Non-Conforming Uses;

(g)      The Debtors shall create, incur or suffer to exist any postpetition liens or security interests other than: (i) those granted pursuant to the Interim Order; (ii) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any postpetition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (v) any other junior liens or security interests that the Debtors are permitted to incur under the Prepetition Loan Documents having a value of more than $1,000,000 in the aggregate at any one time;

(h)      The Debtors shall create, incur or suffer any other claim which is *pari passu* with or senior to the Adequate Protection Claims;

(i)      The filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition Indebtedness or asserting any other cause of action against and/or with respect to the Prepetition Indebtedness, the Prepetition Collateral securing the Prepetition Indebtedness or any of the Prepetition Secured Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party);

(j)      The sale or transfer of any assets of any Debtor outside the ordinary course of the Debtors' business except with the prior written consent of the Prepetition Agent, or the entry of an order or the filing of a motion by any of the Debtors seeking approval of the foregoing;

(k)      (i) The entry of an order or (ii) the filing of a motion by any of the Debtors seeking entry of an order reversing, staying, vacating or otherwise modifying in any material respect the terms of the Interim Order, without the consent of the Prepetition Agent;

(l)      The entry of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code providing relief to any entity other than the Prepetition Secured Parties in an amount greater than $250,000 with respect to the Prepetition Collateral or the Adequate Protection Collateral without the written consent of the Prepetition

19

Agent, which consent may be withheld in its sole and absolute discretion; or

(m)     To the extent not inconsistent with clauses (a) through (l) above, the failure of the Debtors to perform, in any respect, any of the terms, provisions, or obligations under this Interim Order.

12.     *Remedies upon the Termination Date*.  The Debtors shall promptly provide notice to the Prepetition Agent (with a copy to counsel for the U.S. Trustee and the Committee (if any)) of the occurrence of any Termination Event.  Upon the occurrence of the Termination Date, (a) the Adequate Protection Obligations, if any, shall become due and payable and (b) the Prepetition Agent and each of the Prepetition Secured Parties, and, upon five (5) business days written notice to the counsel to the Debtors, the U.S. Trustee, and counsel to the Committee, if any, may (i) setoff amounts in any account of the Debtors maintained with the Prepetition Agent or Prepetition Secured Parties, respectively, to the extent necessary for payment of the Adequate Protection Obligations and (ii) exercise the rights and remedies available under the Prepetition Loan Documents, the Interim Order or applicable law, including without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Adequate Protection Collateral in order to collect the Adequate Protection Obligations.  The automatic stay under section 362 of the Bankruptcy Code is hereby deemed modified and vacated to the extent necessary to permit such actions.  In any hearing regarding any exercise of rights or remedies, the only issues that may be raised by any of the Debtors in opposition thereto shall be whether, in fact, a Termination Event shall have occurred or be continuing, and each of the Debtors hereby waives any right to seek relief, including without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Prepetition Agent and the Prepetition Secured Parties set forth in the Interim Order or the Prepetition Loan Documents.  Any delay or failure of a Prepetition Secured Party to exercise rights under any

20

Prepetition Loan Documents or the Interim Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable Prepetition Loan Documents. The Prepetition Agent shall be entitled to apply the payments or proceeds of the Prepetition Collateral and the Adequate Protection Collateral in accordance with the provisions of the Prepetition Loan Documents and in no event shall any of the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral, the Adequate Protection Collateral or otherwise.  Notwithstanding anything to the contrary herein, however, the Prepetition Agent and Prepetition Secured Parties shall not setoff or otherwise apply payments or proceeds of the Prepetition Collateral or Adequate Protection Collateral to the extent such setoff or application would leave the Debtors with available cash in an amount less than the Carve-Out.  The occurrence of the Termination Date, a Termination Event or anything herein shall not affect the validity, priority or enforceability of any and all of the rights, remedies, benefits and protections provided to the Prepetition Secured Parties under this Interim Order, which rights, remedies, benefits and protections shall survive the Termination Date.

13.     *Limitation on Charging Expenses Against Collateral*.  Subject to entry of the Final Order, all rights to surcharge any Prepetition Collateral under sections 105 or 506(c) of the Bankruptcy Code or any other applicable principle of equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Cases.

14.     *Payments Free and Clear*.  All payments or proceeds remitted to the Prepetition Agent for itself or on behalf of any other Prepetition Secured Party pursuant to the provisions of

the Interim Order or any subsequent order of the Court shall be irrevocable and indefeasible, received free and clear of any claim, charge, assessment or other liability, including, without limitation, subject to entry of the Final Order, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

15.     *Reservation of Rights of the Prepetition Secured Parties*.  The Interim Order and the transactions contemplated hereby shall be without prejudice to (i) the rights of the Prepetition Secured Parties to move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert these Cases, or to take any other action in these Cases and to appear and be heard in any matter raised in these Cases, and (ii) any and all rights, remedies, claims and causes of action which the Prepetition Agent or the Prepetition Secured Parties may have against any non-Debtor party liable for the Prepetition Indebtedness.  For all purposes throughout the Cases, the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date.  For the avoidance of doubt, such request shall survive termination of this Interim Order.

16.     <u>*Modification of Automatic Stay*</u>. The Debtors are authorized to, and upon request of the Prepetition Agent, shall perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby.  The stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtors and each of the Prepetition Secured Parties to perform the transactions and actions contemplated or permitted by this Interim Order.

17.    _Adequate Protection Payments_. The adequate protection payments made pursuant to the Interim Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made); _provided, however,_ that all parties in interest other than the Debtors reserve the right to seek recharacterization of such adequate protection payments as payments of principal, and the Prepetition Agent and the other Prepetition Secured Parties reserve all rights to oppose any such request.

18.    _No Liability to Third Parties_.  None of the Prepetition Agent or the Prepetition Secured Parties shall owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates, and, subject to entry of the Final Order, none of the Prepetition Agent or the Prepetition Secured Parties shall be deemed to be: (i) in "control" of the operations of the Debtors, or (ii) acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act of 1980 or any similar federal or state statute).

19.    _Effect of Stipulations on Third Parties_.  The Debtors have admitted, stipulated and agreed to various matters as set forth in paragraph 3 above and the stipulations and admissions contained in the Interim Order, including without limitation, in paragraph 3 of the Interim Order shall be binding upon the Debtors and any successor thereto in all circumstances.  Subject to entry of the Final Order, the stipulations and admissions contained in the Interim Order, shall be binding upon all other parties in interest, including any Committee or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "**Trustee**"), unless (a) the Committee (if any) or any other party in interest (including any Trustee), in each case, with requisite standing,

has duly filed an adversary proceeding or contested matter, as required under the Bankruptcy Rules (subject in either case to the limitations contained herein), challenging the validity, enforceability, priority or extent of the Prepetition Indebtedness or the liens on the Prepetition Collateral securing the Prepetition Indebtedness or otherwise asserting or prosecuting any avoidance action or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Claims and Defenses**") against the Prepetition Agent or the Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Prepetition Indebtedness or the Prepetition Collateral by no later than (i) the date that is the earlier of forty-five (45) days from the Petition Date, thirty (30) days after the date of appointment of the Committee, if any, or the confirmation of a chapter 11 plan of reorganization; or (ii) any such later date agreed to in writing by the Prepetition Agent or Prepetition Secured Party (as applicable) in its sole and absolute discretion or as ordered by the Court on any motion by a Committee seeking to extend such time period (such time period, the "**Challenge Period**") and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding or contested matter; *provided that*, as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date.  If no such adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, without further order of this Court: (x) the Prepetition Indebtedness shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case; (y) the Prepetition Agent's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date,

and to be, legal, valid, binding, perfected and of the priority specified in paragraph 3(c), not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (z) the Prepetition Indebtedness, the Prepetition Agent's liens on the Prepetition Collateral and the respective Prepetition Secured Parties (and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors) shall not be subject to any other or further challenge by the Committee or any other party in interest, and any such Committee or party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period).  If any such adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, the stipulations and admissions contained in the Interim Order shall nonetheless remain binding and preclusive on the Committee and any other person, including any Trustee, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding or contested matter.  Nothing in the Interim Order vests or confers on any person, including a Committee or Trustee, standing or authority to pursue any cause of action belonging to the Debtors or their estates.  In the event that there is a timely successful challenge brought pursuant to this paragraph, the Court shall retain jurisdiction to fashion an appropriate remedy.

20.     *Milestones*.  In addition to any other dates or milestones set forth in this Interim Order, the following milestones shall be satisfied (the "**Milestones**"); *provided, however*, that the Milestones may be extended or modified without further order of this Court upon the prior written consent of the Prepetition Agent in its sole and absolute discretion:

On or before February 10, 2017:

(a)    the Debtors shall file a motion (the "**Bid Procedures/Sale Motion**") with the Court seeking approval of (i) a stalking horse purchaser (the "**Stalking Horse Purchaser**"), selected by the Debtors in consultation with the Prepetition Agent, to purchase all or substantially all of the assets of the Debtors, (ii) related bid procedures (the "**Bid Procedures**") and the date of an auction (the "**Auction**"), which shall include an executed purchase and sale agreement by and among the Debtors and the Stalking Horse Purchaser (the "**Stalking Horse Agreement**"), and (iii) the sale of substantially all of the Debtors' assets and assumption, assignment, and sale of the Contracts (as defined below). The Bid Procedures/Sale Motion and any related exhibits or supplements and the Stalking Horse Agreement and any related exhibits or supplements shall be in form and substance satisfactory to the Prepetition Agent in its reasonable discretion;

(b)    the Debtors shall file (i) a chapter 11 plan and related disclosure statement and (ii) a motion to approve the adequacy of such disclosure statement, procedures for solicitation of such chapter 11 plan, and scheduling the hearing to consider confirmation of the chapter 11 plan, all of which shall in form and substance satisfactory to the Prepetition Agent in its reasonable discretion;

On or before February 20, 2017:

(c)    Each of the Debtors shall file their respective statement of financial affairs and schedules of assets and liabilities;

On or before March 6, 2017:

(d)    the Court shall have entered an order approving the Stalking Horse Agreement and Bid Procedures (the "**Bid Procedures Order**"), which shall be in form and substance satisfactory to the Prepetition Agent in its sole and absolute discretion, and which shall not have been vacated, reversed, modified, amended or stayed;

(e)    the Debtors shall file with the Court and serve via first class mail on all counterparties to any of the Debtors' executory contracts and unexpired leases (together, the "**Contracts**") and all parties who have requested notice in these Cases pursuant to Bankruptcy Rule 2002 (collectively, the "**Contract Notice Parties**") a notice of assumption, assignment, and sale, substantially in the form of the Notice of Assumption and Assignment attached to the Bid Procedures Order as Exhibit 2 listing all of the Contracts that the Stalking Horse Purchaser proposes to be assumed, assigned, and sold to it in connection with the Sale (each, an "**Assumed Contract**"), which Notice of Assumption and Assignment shall include the Debtors' calculation of the amount necessary to cure all monetary defaults (the "**Cure Costs**") for each Assumed Contract

26

On or before March 13, 2017:

> (f)     if required, the Debtors shall conduct the Auction;

On or before March 16, 2017:

> (g)     the Court shall enter an order approving the sale (the "**Sale**") of the Debtors' assets to the Stalking Horse Purchaser or the successful bidder determined to have made the highest or otherwise best bid for all or substantially all of the assets of the Debtors (the "**Sale Order**"), which shall be in form and substance satisfactory to the Prepetition Agent in their sole and absolute discretion, and which shall not have been vacated, reversed, modified, amended or stayed; and

On or before March 31, 2017:

> (h)     the Debtors shall have consummated the Sale in accordance with the Sale Order.

21.     *Limitation on Use of Collateral*.   The Debtors shall use the proceeds of the Prepetition Collateral solely as provided in the Interim Order.  Notwithstanding anything herein or in any other order of this Court to the contrary, no Prepetition Collateral or the Carve-Out may be used to: (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Prepetition Loan Documents, or the liens or claims granted under the Interim Order or the Prepetition Loan Documents; (b) assert any Claims and Defenses against the Prepetition Agent or the Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) seek to modify any of the rights granted to the Prepetition Agent and the Prepetition Secured Parties under the Interim Order, (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of this Court or another court of competent jurisdiction, (e) use or seek to use any Cash Collateral or otherwise dispose of Prepetition Collateral outside of the ordinary course of the Debtors' business without the consent

of the Prepetition Agent, or (f) take any action which is contrary, in a manner that is material and adverse to the Prepetition Agent or Prepetition Secured Parties.

22.    *Right to Credit Bid.*  The Prepetition Agent (or one or more of its designees, affiliates or assignees), on behalf of the Prepetition Secured Parties, shall have the unqualified right to credit bid, at any time (including, but not limited to, after any bid deadline has passed), any or all of the Prepetition Indebtedness in any sale (whether public or private) of the Prepetition Collateral (or any Adequate Protection Collateral subject to any Adequate Protection Liens) (under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) any plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code to the extent any sale contemplated thereunder does not result in the payment in full of all Prepetition Indebtedness on the effective date of such plan, or (iii) section 725 of the Bankruptcy Code). The Debtors, on behalf of themselves and their estates, stipulate and agree that any sale of all or part of the Prepetition Collateral (or any Adequate Protection Collateral subject to any Adequate Protection Liens) that does not include a right to credit bid up to the full amount of the Prepetition Indebtedness would mean that the Prepetition Agent and Prepetition Secured Parties will not receive the indubitable equivalent of their claims and interests.  If the Prepetition Agent or its designees, affiliates or assignees make a credit bid in connection with any auction or other sale process relating to the sale or other disposition of any Adequate Protection Collateral or Prepetition Collateral, then for purposes of such auction or sale process or any applicable order of this Court, the Prepetition Agent shall be automatically deemed to be a qualified bidder and its bid shall be automatically deemed to constitute a qualified bid, regardless of whether the qualified bidder or qualified bid requirements are satisfied.  Notwithstanding any order entered by the Court in relation to the approval of bidding procedures for any sale of the Prepetition

Collateral, including, but not limited to, any qualified bid or qualified bidder requirements or procedures relating to financing contingencies, in conjunction with its rights herein to credit bid, the Prepetition Agent shall have the unqualified right to provide financing to prospective bidders, including, but not limited to, through credit bidding all or a portion of the Prepetition Indebtedness.

23.     *Enforceability; Waiver of Any Applicable Stay*.   The Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.   Notwithstanding Bankruptcy Rules 6004, 7062 or 9014 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, the Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of the Interim Order.

24.     *No Impact on Certain Contracts or Transactions*.   No rights of any entity in connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560 and 561 of the Bankruptcy Code, whatever they might or might not be, are affected by the provisions of the Interim Order.

25.     *No Third Party Rights*.   Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

26.     *Proofs of Claim*.   Neither the Prepetition Agent nor any of the Prepetition Secured Parties will be required to file proofs of claim in any of the Cases or successor cases, and the Debtors' stipulations in paragraph 3 herein shall be deemed to constitute a timely filed proof of claim against the applicable Debtors.   Notwithstanding the foregoing, the Prepetition Agent (on behalf of itself and the other Prepetition Secured Parties) is hereby authorized and

entitled, but not required,  in its sole discretion, to file  (and amend and/or supplement) a master proof of claim for any claims  of  the Prepetition Secured Parties arising from the applicable Prepetition Loan Documents;  *provided that* nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against any of the Debtors.  Any order entered by the Court in relation to the establishment of a bar date in any of the Csaes or Successor Cases shall not apply to the Prepetition Agent or the Prepetition Secured Parties.

27.     *Section 552(b) of the Bankruptcy Code.*  Each of the Prepetition Agent and the Prepetition Secured Parties shall  be  entitled  to  all  of  the  rights  and  benefits  of section 552(b) of the Bankruptcy Code and, subject to entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agent and  the Prepetition Secured Parties with respect to proceeds, products, offspring, rents and profits of any of the Prepetition Collateral.

28.     *Survival*.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any case under chapter 7 of the Bankruptcy Code  upon  the  conversion  of  any  of  the  Cases,  or  in  any  other  proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**"); or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the Prepetition Secured Parties pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of any of the Cases or any Successor Cases, and shall maintain their

priority as provided by this Interim Order until: (i) all of the Prepetition Indebtedness pursuant to the Prepetition Loan Documents and this Interim Order, including, without limitation, the Adequate Protection Claims, have been indefeasibly paid in full in cash.   The terms and provisions concerning the indemnification of the Prepetition Agent contained in the Prepetition Loan Documents and this Interim Order shall continue in the Cases, in any Successor Cases, following dismissal of any of the Cases or any Successor Cases, following termination of the Prepetition Loan Documents and/or the indefeasible repayment of the Prepetition Indebtedness. In addition, the terms and provisions of this Interim Order shall continue in full force and effect for the benefit of the Prepetition Secured Parties notwithstanding the repayment in full of or termination of the Prepetition Indebtedness.

29.   *No Waiver by Failure to Seek Relief.*   The failure of the Prepetition Agent or Prepetition Secured Lenders to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Prepetition Agent or Prepetition Secured Lenders.

30.   *Reversal, Stay, Modification or Vacatur.*   In the event the provisions of this Interim Order are reversed, stayed, modified or vacated following any further hearing, such reversals, modifications, stays or vacatur shall not affect the rights and priorities of the Prepetition Secured Parties granted pursuant to this Interim Order. Notwithstanding any such reversal, stay, modification or vacatur, any indebtedness, obligation or liability incurred by the Debtors pursuant to this Interim Order arising prior to the Prepetition Agent's receipt of notice of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the Prepetition Secured Parties shall

continue to be entitled to all of the rights, remedies, privileges and benefits, including any payments authorized herein and the security interests and liens granted herein, with respect to all such indebtedness, obligation or liability, and the validity of any payments made or obligations owed or credit extended or lien or security interest granted pursuant to this Interim Order is and shall remain subject to the protection afforded under the Bankruptcy Code.

31.     *Headings.*  The headings in the Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

32.     *Retention of Jurisdiction.*  The Court has and will retain jurisdiction to enforce the Interim Order.

33.     *Final Hearing.*  The Final Hearing on the Motion is scheduled for [_____], at [_____] before the Court.

34.     *Objections*.  The Debtors shall promptly mail copies of the Interim Order to the parties having been given notice of the Interim Hearing and to any other party which has filed a request for notices in the Cases.  Any party in interest objecting to the relief sought at the Final Hearing shall submit any such objection in writing and file same with the Court so as to be received no later than 4:00 p.m. (Central Time) on [_____], 2017.


Dated: Houston, Texas
           [_____], 2017


                                                    _____
                                                    UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

**Azure Midstream Partners, LP**
*Interim Cash Collateral Budget - Exhibit A*
*As of January 30, 2017*

| $000's | Actual 1/13/2017 | Actual 1/20/2017 | Actual 1/27/2017 | Fcst Week 1 2/3/2017 | Fcst Week 2 2/10/2017 | Fcst Week 3 2/17/2017 | Fcst Week 4 2/24/2017 |
|---|---|---|---|---|---|---|---|
| Beginning Cash | 12,882 | 12,576 | 9,614 | 6,091 | 5,289 | 3,482 | 3,563 |
| Net Receipts | 324 | 667 | 372 | (204) | 555 | 442 | 460 |
| **Operating Disbursements** | | | | | | | |
| Operating Disbursements | (102) | (260) | (104) | (145) | (145) | (145) | (145) |
| Omnibus Disbursements | - | - | (725) | - | - | - | - |
| Corporate G&A Disbursements | (180) | (233) | (398) | (58) | (33) | (33) | (33) |
| Tax Disbursements | - | - | - | - | (14) | (14) | (50) |
| Total Operating Disbursements | (282) | (493) | (1,227) | (203) | (192) | (192) | (228) |
| Total Capital Expenditures | (65) | (146) | (5) | (339) | (171) | (171) | (191) |
| **Restructuring Adjustments** | | | | | | | |
| Total Restructuring Adjustments [1] | - | (2,831) | - | (55) | (2,000) | - | - |
| **Restructuring Professional Fees** | | | | | | | |
| Agent Professional Fees | (108) | - | (649) | - | - | - | - |
| Debtor Professional Fees | (176) | (159) | (2,013) | - | - | - | - |
| Total Restructuring Professional Fees | (284) | (159) | (2,662) | - | - | - | - |
| Net Cash Flow Prior to Financing Activities | (306) | (2,962) | (3,523) | (801) | (1,807) | 80 | 41 |
| Cash Prior To Financing Activities | 12,576 | 9,614 | 6,091 | 5,289 | 3,482 | 3,563 | 3,603 |
| Legacy Financing Activities | | | | | | | |
| Existing Revolver - Interest Payments | - | - | - | - | - | - | - |
| Total Legacy Financing Activities | - | - | - | - | - | - | - |
| Ending Cash Balance | 12,576 | 9,614 | 6,091 | 5,289 | 3,482 | 3,563 | 3,603 |
| Ending Liquidity | 12,576 | 9,614 | 6,091 | 5,289 | 3,482 | 3,563 | 3,603 |

1. Does not include restructuring professionals or bonus payments in the forecast periods.

**Exhibit B**

**Attorney Checklist**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|                          |   |                                   |
|--------------------------|---|-----------------------------------|
| In re:                   | § | **Chapter 11**                    |
|                          | § |                                   |
| **AZURE MIDSTREAM**      | § | **Case No. 17-[_____] (___)**  |
| **PARTNERS, LP,** *et al.*, | § |                                |
|                          | § | **Joint Administration Requested** |
|                          | § | **(Emergency Hearing Requested)**  |
| Debtors.[7]              | § |                                   |
|                          | § |                                   |

**ATTORNEY CHECKLIST CONCERNING MOTION**
**AND ORDER PERTAINING TO USE OF CASH COLLATERAL**

CERTIFICATE BY COUNSEL

   This is to certify that the following checklist fully responds to the Court's inquiry concerning material terms of the motion and/or proposed order:

Yes, at Page/Exhibit
Y means yes; N means no
N/A means not applicable
(Page Listing Optional)

---

[7] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  Azure Midstream Partners, LP (7595), Azure ETG, LLC (3388), Azure Holdings GP, LLC (0537), Azure Midstream Partners GP, LLC (8089), Azure TGG, LLC (6233), Marlin G&P I, LLC (6073), Marlin Logistics, LLC (8460), Marlin Midstream Finance Corp. (0130), Marlin Midstream, LLC (2587), Murvaul Gas Gathering, LLC (0826), Talco Midstream Assets, Ltd. (7004), and Turkey Creek Pipeline, LLC (1161).

1. Identification of Proceedings:
    (a)   Preliminary or final motion/order (circle one) .................................. Preliminary
    (b)   Continuing use of cash collateral (§ 363)............................................ Y
    (c)   New financing (§ 364)......................................................................... N
    (d)   Combination of §§ 363 and 364 financing ......................................... N
    (e)   Emergency hearing (immediate and irreparable harm) ...................... Y

2. Stipulations:
    (a)   Brief history of debtor's businesses and status of debtor's prior
        relationships with lender........................................................................ Y
    (b)   Brief statement of purpose and necessity of financing........................ N/A
    (c)   Brief statement of type of financing (i.e., accounts receivable,
        inventory) ............................................................................................ N/A
\*\*  (d)   Are lender's pre-petition security interest(s) and liens deemed    Y, subject to
        valid, fully perfected and non-avoidable ............................................ challenge
          (i)   Are there provisions to allow for objections to above?............. Y
    (e)   Is there a post-petition financing agreement between lender and
        debtor?.................................................................................................. N
          (i)   If so, is agreement attached? ....................................................... N/A
\*\*  (f)   If there is an agreement are lender's post-petition security interests
        and liens deemed valid, fully perfected and non-avoidable?.............. N/A

    (g)   Is lender undersecured or oversecured? (circle one) ........................... Undersecured
    (h)   Has lender's non-cash collateral been appraised? ............................... N
          (i)   Insert date of latest appraisal ....................................................... N/A
    (i)   Is debtor's proposed budget attached? ................................................ Y
    (j)   Are all pre-petition loan documents identified? ................................. Y
    (k)   Are pre-petition liens on single or multiple assets? (circle one) ........ Multiple
    (1)   Are there pre-petition guaranties of debt? .......................................... Y
          (i)   Limited or unlimited? (circle one)............................................... Unlimited

3. Grant of Liens:
\*    (a)   Do post-petition liens secure pre-petition debts? ............................... N
\*    (b)   Is there cross-collateralization?............................................................ N
\*\*  (c)   Is the priority of post-petition liens equal to or higher than existing
        liens?.................................................................................................... N/A
\*\*  (d)   Do post-petition liens have retroactive effect?................................... N/A
    (e)   Are there restrictions on granting further liens or liens of equal or
        higher priority? .................................................................................... Y
\*    (f)   Is lender given liens on claims under §§ 506(c), 544-50 and §§
        522? ...................................................................................................... N
\*\*       (i)   Are lender's attorneys fees to be paid? ....................................... Y
          (ii)   Are debtor's attorneys fees excepted from § 506(c)?................. N

*
    (g)    Is lender given liens upon proceeds of causes of action under §§ 544, 547 and 548?....................................................................   Y, subject to entry of the Final Order

4. Administrative Priority Claims:
    (a)    Is lender given an administrative priority?......................................... N/A
    (b)    Is administrative priority higher than § 507(a)?................................. N/A
    (c)    Is there a conversion of pre-petition secured claim to post-petition administrative claim by virtue of use of existing collateral?.............. N

5. Adequate Protection (§ 361):
    (a)    Is there post-petition debt service?.................................................... N
    (b)    Is there a replacement/additional 361(1) lien? (circle one or both) .... Y, both
**     (c)    Is the lender's claim given super-priority? (§ 364(c) or (d)).............. Y
    (d)    Are there guaranties?.......................................................................... N
    (e)    Is there adequate Insurance coverage? ............................................. Y
    (f)    Other?  Others include: (i) payment of attorneys fees and expenses for counsel for Administrative Agent, (ii) maintenance of cash management system, (iii) various reporting obligations, and (iv) certain asset sale restrictions ............................................................. Y

6. Waiver/Release Claims v. Lender:
    (a)    Debtor waives or release claims against lender, including, but not limited to, claims under §§ 506(c), 544-550, 552, and 553 of the
**     Code?................................................................................................... Y
**     (b)    Does the debtor waive defenses to claim or liens of lender?.............. Y

7. Source of Post-Petition Financing (§ 364 Financing):
    (a)    Is the proposed lender also the pre-petition lender?............................ N/A
    (b)    New post-petition lender?................................................................... N/A
    (c)    Is the lender an insider?...................................................................... N/A

8. Modification of Stay:
**     (a)    Is any modified lift of stay allowed? .................................................. Y
**     (b)    Will the automatic stay be lifted to permit lender to exercise self-help upon default without further order?........................................... Y
    (c)    Are there any other remedies exercisable without further order of court?.................................................................................................. Y
    (d)    Is there a provision that any future modification of order shall not affect status of debtor's post-petition obligations to lender?.............. Y

9. Creditors' Committee:
    (a)    Has creditors' committee been appointed?......................................... N
    (b)    Does creditors' committee approve of proposed financing?.............. N/A

10. Restrictions on Parties in Interest:

| | | | |
|---|---|---|---|
| ** | (a) | Is a plan proponent restricted in any manner, concerning modification of lender's rights, liens and/or causes? | N |
| ** | (b) | Is the debtor prohibited from seeking to enjoin the lender in pursuit of rights? | N |
| ** | (c) | Is any party in interest prohibited from seeking to modify this order? | N |
| | (d) | Is the entry of any order conditioned upon payment of debt to lender? | N |
| | (e) | Is the order binding on subsequent trustee on conversion? | Y |

11. Nunc Pro Tunc:

| | | |
|---|---|---|
| (a) | Does any provision have retroactive effect? | Y |

12. Notice and Other Procedures:

| | | |
|---|---|---|
| (a) | Is shortened notice requested? | Y |
| (b) | Is notice requested to shortened list? | N |
| (c) | Is time to respond to be shortened? | Y |
| (d) | If final order sought, have 15 days elapsed since service of motion pursuant to Rule 4001(b)(2)? | N/A |
| (e) | If preliminary order sought, is cash collateral necessary to avoid immediate and irreparable harm to the estate pending a final hearing? | Y |
| (f) | Certificate of Conference included? | N/A |
| (g) | Certificate of Service included? | Y |
| (h) | Is there verification of transmittal to U.S. Trustee included pursuant to Rule 9034? | Y |
| (i) | Has an agreement been reached subsequent to filing motion? | N/A |
| (i) | If so, has notice of the agreement been served pursuant to Rule 4001(d)(4)? | N/A |
| (ii) | Is the agreement in settlement of motion pursuant to Rule 400 l (d)(4)? | N/A |
| (iii) | Does the motion afford reasonable notice of material provisions of agreement pursuant to Rule 400l(d)(4)? | N/A |
| (iv) | Does the motion provide for opportunity for hearing pursuant to Rule 9014? | Y, for Final Hearing |

SIGNED this the 30th day of January, 2017.

WEIL, GOTSHAL & MANGES LLP

*/s/Christopher M. López*
Christopher M. López (24041356)
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email: chris.lopez@weil.com

-and-

Gary T. Holtzer (*pro hac vice* pending)
Charles M. Persons (*pro hac vice* pending)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Email:  gary.holtzer@weil.com
Email:  charles.persons@weil.com

*Proposed Attorneys for the Debtors*
*and Debtors in Possession*