IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **AZURE MIDSTREAM** | § | Case No. 17-30461 (DRJ) |
| **PARTNERS, LP,** *et al.*, | § | |
| | § | (Jointly Administered) |
| | § | |
| Debtors.[1] | § | Re: Docket No. 6 |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) CONTINUE EXISTING CASH MANAGEMENT SYSTEM, (B) MAINTAIN EXISTING BUSINESS FORMS AND BANK ACCOUNTS, AND (C) CONTINUE INTERCOMPANY ARRANGEMENTS; AND (II) GRANTING RELATED RELIEF PURSUANT TO SECTIONS 105(a), 345(b), 363(b)(1), AND 363(c)(1) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003 AND 6004**

Upon the motion, dated January 30, 2017 (the "**Motion**"),[2] of Azure Midstream Partners, LP, and its subsidiaries and certain affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), for (i) interim and final authority to (a) continue their existing cash management system; (b) continue using their existing Business Forms and Bank Accounts; and (c) continue their intercompany arrangements; (ii) waiver of the requirements of section 345(b) of the Bankruptcy Code; and (iii) related relief, each as more fully set forth in the Motion; and upon consideration of the Mosley Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue is allowed before this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Azure Midstream Partners, LP (7595), Azure ETG, LLC. (3388), Azure Holdings GP, LLC (0537), Azure Midstream Partners GP, LLC (8089), Azure TGG, LLC (6233), Marlin G&P I, LLC (6073), Marlin Logistics, LLC (8460), Marlin Midstream Finance Corp. (0130), Marlin Midstream, LLC (2587), Murvaul Gas Gathering, LLC (0826), Talco Midstream Assets, Ltd. (7004), and Turkey Creek Pipeline, LLC (1161).

[2] All capitalized terms used, but not otherwise defined, herein shall have the meanings ascribed to such terms in the Motion.

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted as set forth herein.

2. The Debtors are authorized, pursuant to sections 363(c) and 105(a) of the Bankruptcy Code, to continue to manage their cash pursuant to the Cash Management System maintained before the Petition Date; to collect and disburse cash in accordance with the Cash Management System, including Intercompany Transactions, offsets against the Omnibus Transfers on account of the Employee Benefits allocated to AME, and to make ordinary course changes to their Cash Management System without further order of the Court.

3. The Debtors are authorized, pursuant to sections 363(c) and 105(a) of the Bankruptcy Code, to make any and all Omnibus Transfers.

4. Pursuant to section 105(a) of the Bankruptcy Code, each of the Banks is authorized and directed to continue to honor transfers, as directed by the Debtors, of funds among the Bank Accounts.

5. The Debtors shall maintain accurate records of all transfers within the Cash Management System so that all postpetition transfers and transactions shall be adequately

and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors before the Petition Date.

6. The Debtors are further authorized to (i) designate, maintain, and continue to use any or all of their existing Bank Accounts, including those listed on **Exhibit 1** annexed hereto, in the names and with the account numbers existing immediately before the Petition Date, (ii) deposit funds in, and withdraw funds from, such accounts by all usual means, including, without limitation, checks, wire transfers, ACH transfers, and other debits, (iii) pay any Bank Fees or other charges associated with the Bank Accounts, whether arising before or after the Petition Date, including any costs incurred by the Banks in complying with section 345 of the Bankruptcy Code in connection with these cases, and (iv) treat their prepetition Bank Accounts for all purposes as debtor in possession accounts.

7. The Debtors are authorized to open new bank accounts; *provided*, that all accounts be opened by any of the Debtors on or after the Petition Date as debtor-in possession bank accounts at a depository approved by the United States Trustee; *provided, further*, that such opening shall be timely indicated on the Debtors' monthly operating reports and notice of such opening or closing shall be provided to the U.S. Trustee.

8. All Banks with which the Debtors maintained Bank Accounts as of the Petition Date are authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of Debtors' accounts with such bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the

3

same extent the Debtors were responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as Bank Fees for the maintenance of the Cash Management System.

9. The Banks are authorized to charge, and the Debtors are authorized and directed to pay, honor, or allow, both prepetition and postpetition fees, costs, charges, and expenses, including the Bank Fees, and charge back returned items to the Bank Accounts in the ordinary course.

10. The Banks shall not be liable to any party on account of: (a) following the Debtors' representations, instructions, or presentations as to any order of the Court (without any duty of further inquiry); (b) the honoring of any prepetition checks, drafts, wires, or ACH transfers in a good faith belief or upon a representation by the Debtors that the Court has authorized such prepetition check, draft, wires, or ACH transfers; or (c) an innocent mistake made despite implementation of reasonable handling procedures.

11. Nothing contained herein shall prevent the Debtors from closing any Bank Account(s) as they may deem necessary and appropriate, any relevant Bank is authorized to honor the Debtors' requests to close such Bank Accounts, and the Debtors shall give notice of the closure of any account to the U.S. Trustee.

12. All intercompany claims against one Debtor by another Debtor or a non-Debtor Affiliate arising after the Petition Date as a result of intercompany transactions and transfers in the ordinary course of business shall be accorded administrative expense priority status in accordance with sections 503(b) of the Bankruptcy Code.

13. The Debtors are in compliance with section 345(b) of the Bankruptcy Code with respect to each of the Bank Accounts maintained by the Debtors as of the Petition

Date. Notwithstanding anything in to the contrary in this Final Order, no later than 14 days after entry of this Final Order:

(a) The Debtors shall amend the signature card agreement for the Concentration Account, as defined in the Motion and as identified on **Exhibit 1**, to denominate it to be a debtor-in-possession bank account, and shall transmit a copy of said amended signature card agreement to the United States Trustee;

(b) The Debtors shall ensure that funds contained in the Depository Accounts, as defined in the Motion, and as identified on **Exhibit 1**, are swept into the Concentration Account on a daily basis;

(c) The Debtors shall ensure that the Disbursement Accounts, as defined in the Motion and as identified on Exhibit 1, are funded from the Concentration Account on a daily basis;

(d) The Debtors, insofar as the Depository Accounts, the Disbursement Accounts, and the Payroll Disbursement Account are concerned, (i) shall maintain a cash balance less than or equal to the FDIC insured limit or (ii) shall transfer cash balances in excess of the FDIC insured limit into the Concentration Account or other debtor-in-possession account at a depository approved by the United States Trustee; and

(e) The Debtors shall transmit to the United States Trustee proof of the closing of any of the Debtors' Bank Accounts.

14. The Debtors are authorized to use their existing Business Forms and not print "debtor in possession" on any of their Business Forms, and any otherwise applicable requirement that the Debtors print "debtor in possession" on any new checks ordered during the

5

chapter 11 cases, or that the Debtors change their system for electronic generation of checks and Business Forms to reflect their status as debtors in possession, is hereby waived.

15. Those certain existing deposit agreements between the Debtors and the Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and that all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.

16. The Debtors and the Banks may, without further order of this Court, agree to and implement changes to the cash management systems and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts.

17. As soon as practicable after entry of this Final Order, the Debtors shall serve a copy of this Final Order on the Banks.

18. Nothing contained in this Final Order or in the Motion is intended to be, or shall be, construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise any payment made pursuant to this Final Order is not intended to be, and shall not be, construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

19. Notwithstanding anything in this Final Order to the contrary, the Debtors' authority to use or transfer cash hereunder shall be subject to the limitations and restrictions as are provided for with respect to the use or transfer of cash in any order approving the Debtors' cash collateral motion.

20. The requirements of Bankruptcy Rule 6003(b) have been satisfied.

21. The requirements of Bankruptcy Rule 6004(a) are waived.

22. Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

23. The Debtors are authorized to take all steps necessary or appropriate to carry out this Final Order.

24. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

Dated: _____, 2017
      Houston, Texas

                                              THE HONORABLE DAVID R. JONES
                                              UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**List of Bank Accounts**

| Account Holder | Bank Name | Account Number | Type of Account |
|---|---|---|---|
| Azure Midstream Partners LP | Wells Fargo | XXXXX6079 | Concentration Account |
| Azure TGG LLC | Wells Fargo | XXXXX5543 | Depository Account (ZBA) |
| Azure ETG LLC | Wells Fargo | XXXXX5576 | Depository Account (ZBA) |
| Talco Midstream Assets LTD | Wells Fargo | XXXXX5592 | Depository Account (ZBA) |
| Marlin Midstream LLC | Wells Fargo | XXXXX5832 | Depository Account (ZBA) |
| Marlin Logistics LLC | Wells Fargo | XXXXX5857 | Depository Account (ZBA) |
| Azure TGG LLC | Wells Fargo | XXXXX5550 | Disbursement Account (ZBA) |
| Azure ETG LLC | Wells Fargo | XXXXX5584 | Disbursement Account (ZBA) |
| Talco Midstream Assets LTD | Wells Fargo | XXXXX5339 | Disbursement Account (ZBA) |
| Marlin Midstream LLC | Wells Fargo | XXXXX5840 | Disbursement Account (ZBA) |
| Marlin Logistics LLC | Wells Fargo | XXXXX5865 | Disbursement Account (ZBA) |
| Azure Midstream Partners LP | Wells Fargo | XXXXX6087 | Disbursement Account (ZBA) |
| Azure Midstream Partners GP, LLC | Chase | XXXXX9517 | Payroll Disbursement Account |

## **Exhibit 2**

Flow of Funds Schematic



# **Exhibit 3**

Insurance Summary

| Type of Coverage | Insurer(s) | Policy Number(s) | Policy Term | Annual Premium | Debtors' Allocation | Premium Finance | Deductible / Retention |
|---|---|---|---|---|---|---|---|
| Business Owner - Commercial Liability | Great Northern Insurance Company | 35848968 | 10/14/16-10/14/17 | $105,441 | 54% | First Insurance | - $25,000 bodily injury and property damage / occurrence<br>- $1,000 employee benefit / occurrence |
| Business Owner - Automobile | Great Northern Insurance Company | 73582532 | 10/14/16-10/14/17 | $101,349 | 54% | First Insurance | $1,000 / occurrence |
| Workers' Compensation/Employers Liability | Federal Insurance Company | 71753816 | 10/14/16-10/14/17 | $49,656 | 54% | First Insurance | No deductible |
| Business Owner - Umbrella | Ace Property and Casualty Ins. Co. | XOOG27913040002 | 10/14/16-10/14/17 | $189,798 | 54% | First Insurance | - $2,000,000 GL and Auto / occurrence<br>- $1,000,000 Employer Liability / occurrence<br>- $10,000,000 Pollution / occurrence |
| Business Owner - Excess Liability over $25 million | Federal Insurance Company | 79851394 | 10/14/16-10/14/17 | $47,499 | 54% | First Insurance | Excess of underlying |
| Business Owner - Excess Liability over $40 million | XL Bermuda Ltd. | BM00030294LI16A | 10/14/16-10/14/17 | $85,500 | 54% | N/A | Excess of underlying |
| Business Owner - Pollution Legal | Ironshore Speciality Ins. Co. | 2543900 | 10/14/16-10/14/17 | $139,521 | 54% | First Insurance | $100,000 / occurrence |
| Business Owner - Pollution Legal Excess over $1 million | Ironshore Speciality Ins. Co. | 1491602 | 10/14/16-10/14/17 | $152,844 | 54% | First Insurance | Excess of underlying |
| Property (1 of 4) | Ace Property and Casualty Ins. Co. | EPRN09177796 | 3/29/16-3/29/17 | $152,420 | 54% | Prime Rate | - $100,000 / occurrence Property Damage; except:<br>- $250,000 / occurrence Gas Processing Facilities Plant; and<br>- $10,000 / occurrence Non-Industrial Property and Property in Transit<br>- $250,000 / occurrence Flood |
| Property (2 of 4) | AIG | 4902400 | 3/29/16-3/29/17 | $78,836 | 54% | Prime Rate | Same as underlying |

| Type of Coverage | Insurer(s) | Policy Number(s) | Policy Term | Annual Premium | Debtors' Allocation | Premium Finance | Deductible / Retention |
|---|---|---|---|---|---|---|---|
| Property (3 of 4) | Zurich American Insurance Company | OGR011359201 | 3/29/16-3/29/17 | $78,765 | 54% | Prime Rate | Same as underlying |
| Property (4 of 4) | Various London Companies and Syndicates | EMDFA000116D | 3/29/16-3/29/17 | $186,694 | 54% | Prime Rate | |
| Terrorism | Various London Companies and Syndicates | MAZUR000316 | 3/29/16-3/29/17 | $31,500 | 54% | Prime Rate | $25,000 / occurrence |
| Directors and Officers (Primary, includes six (6) year run-off) | AIG | 06-279-01-58 | 1/15/16-1/15/18 | $509,838 | 50% | N/A | |
| Directors and Officers (Excess over $10 million, includes six (6) year run-off) | XL Bermuda Ltd. | ELU142679-16 | 1/15/16-1/15/18 | $323,125 | 50% | N/A | |
| Directors and Officers (Excess over $20 million, includes six (6) year run-off) | Arch | DOX 9300482-01 | 1/15/16-1/15/18 | $200,750 | 50% | N/A | |
| Directors and Officers (Excess over $30 million, includes six (6) year run-off) | Zurich American Insurance Company | DOC 008689-01 | 1/15/16-1/15/18 | $127,875 | 50% | N/A | |
| Directors and Officers (Excess BFA over $40 million, includes six (6) year run-off) | AIG | 06-419-80-74 | 1/15/16-1/15/18 | $90,496 | 50% | N/A | |
| Directors and Officers (Excess BFA over $50 million, includes six (6) year run-off) | Endurance | ADX10006318101 | 1/15/16-1/15/18 | $66,000 | 50% | N/A | |

| Type of Coverage | Insurer(s) | Policy Number(s) | Policy Term | Annual Premium | Debtors' Allocation | Premium Finance | Deductible / Retention |
|---|---|---|---|---|---|---|---|
| Directors and Officers (Excess BFA over $60 million, includes six (6) year run-off) | Berkshire Hathaway | 47-EPC-303168-01 | 1/15/16-1/15/18 | $275,000 | 50% | N/A | |
| Directors and Officers (Excess BFA over $70 million, includes six (6) year run-off) | AIG | 03-477-03-43 | 1/15/16-1/15/18 | $261,250 | 50% | N/A | |