**<u>Exhibit A</u>**

**Proposed Bid Procedures Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **AZURE MIDSTREAM** | § | Case No. 17-30461 (DRJ) |
| **PARTNERS, LP**, *et al.*, | § | |
| | § | Jointly Administered |
| | § | |
| Debtors.[1] | § | |
| | § | |

**ORDER APPROVING (A) BID PROCEDURES, (B) PROCEDURES FOR
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES AND RELATED NOTICES, (C) NOTICE OF
AUCTION AND SALE HEARING, AND (D) RELATED RELIEF**

Upon the Motion, dated February 10, 2017 (the "**Motion**")[2], filed by Azure Midstream Partners, LP ("**Azure LP**") and its subsidiaries and certain affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105, 363, 365, and 503 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an order:

(i)      approving the bid procedures (the "**Bid Procedures**"), the form of which is annexed as **Exhibit 1** hereto for (i) the sale (the "**Sale Transaction**") of substantially all of the Debtors' assets (the "**Assets**") pursuant to section 363 of the Bankruptcy Code and (ii) the conduct

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Azure Midstream Partners, LP (7595), Azure ETG, LLC (3388), Azure Holdings GP, LLC (0537), Azure Midstream Partners GP, LLC (8089), Azure TGG, LLC (6233), Marlin G&P I, LLC (6073), Marlin Logistics, LLC (8460), Marlin Midstream Finance Corp. (0130), Marlin Midstream, LLC (2587), Murvaul Gas Gathering, LLC (0826), Talco Midstream Assets, Ltd. (7004), and Turkey Creek Pipeline, LLC (1161).  The Debtors' principal offices are located at 12377 Merit Drive, Suite 300, Dallas, Texas 75251.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to those terms in the Motion.

of an auction (the "**Auction**") with respect to the Assets if the Debtors receive more than one bid for the Assets;

(ii)        approving the Debtors' entry into the Stalking Horse Agreement with the Stalking Horse Purchaser;

(iii)       approving the Bid Protections granted to the Stalking Horse Purchaser as provided in the Stalking Horse Agreement;

(iv)       approving the proposed Notice of Assumption and Assignment to be served on the Contract Notice Parties (as defined herein) (the "**Notice of Assumption and Assignment**") substantially in the form annexed hereto as **Exhibit 2**;

(v)        approving procedures for assumption, assignment, and sale of executory contracts and unexpired leases, including notice of proposed cure costs (the "**Assumption and Assignment Procedures**");

(vi)       scheduling the Auction for **March 10, 2017 at 9:00 a.m. (prevailing Central Time)** and scheduling a sale hearing (the "**Sale Hearing**") for **March 15, 2017 at 10:30 a.m. (prevailing Central Time)** to approve the Sale Transaction;

(vii)      approving the proposed Notice of Auction and Sale Hearing to be served on the Sale Notice Parties (as defined herein) (the "**Sale Notice**") substantially in the form annexed hereto as **Exhibit 3**; all as more fully described in the Motion; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

FOUND AND DETERMINED THAT:[3]

A.      This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, the consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C.§ 157(b), and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief sought in the Motion are sections 105(a), 363, 365, and 503, and Bankruptcy Rules 2002, 6004, and 6006.

C.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  The entry of this Order and approval of the relief sought in the Motion (including approval of the Bid Protections) are in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

D.      The Debtors have articulated good and sufficient reasons for the Court to approve (i) the Bid Procedures for the sale of substantially all of the Assets pursuant to the Sale Transaction, (ii) the Assumption and Assignment Procedures in connection with the Sale Transaction, (iii) the establishment of a date for the Auction, (iv) the form and manner of notices of the Auction and Assumption and Assignment Procedures, and (v) related relief in connection with the Sale Transaction.  Such good and sufficient reasons were set forth in the Motion or have been described at the hearing, are incorporated by reference herein, and, among other things, form the basis of the findings of fact and conclusions of law set forth herein.

E.      The Debtors have demonstrated that the Bid Procedures are fair, reasonable, and appropriate and are designed to maximize the value of the Debtors' estates.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

F.      The Debtors and their advisors, including Evercore Group LLC, engaged in a robust and extensive marketing and sale process before and after the Petition Date, over a period of more than four months, to solicit and develop the highest or otherwise best offer for the Assets.

G.      The Stalking Horse Agreement with the Stalking Horse Purchaser represents the highest or otherwise best offer the Debtors have received to date for the sale of the Assets. Approval of the Stalking Horse Purchaser as a "stalking horse" bidder and the Stalking Horse Agreement as a "stalking horse" sale agreement is in the best interests of the Debtors and the Debtors' estates and creditors, and it reflects a sound exercise of the Debtors' business judgment. The Stalking Horse Agreement provides the Debtors with the opportunity to sell the Assets to preserve and realize their going concern value. The Stalking Horse Agreement will enable the Debtors to secure a fair baseline price of the Assets at the Auction and, accordingly, will provide a clear benefit to the Debtors' estates, their creditors, and all other parties in interest.

H.      The Bid Protections, including, but not limited to, the Break-Up Fee and Expense Reimbursement, (i) have been negotiated by the Stalking Horse Purchaser and the Debtors, and their respective advisors, at arms' length and in good faith and (ii) are necessary to ensure that the Stalking Horse Purchaser will continue to pursue its Stalking Horse Agreement and the Sale Transaction. The Break-Up Fee and Expense Reimbursement, to the extent payable under the Stalking Horse Agreement, (a) are an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code and shall be treated as allowed administrative expense claims against the Debtors' estates pursuant to sections 105(a), 503(b) and 507(a)(2) of the Bankruptcy Code, (b) are commensurate to the real and material benefits conferred upon the Debtors' estates by the Stalking Horse Purchaser, and (c) are fair, reasonable and appropriate, including in light of the size and nature of the Sale Transaction and the

efforts that have been and will be expended by the Stalking Horse Purchaser. The Bid Protections, including, but not limited to, the Break-Up Fee and Expense Reimbursement, are a material inducement for, and condition of, the Stalking Horse Purchaser's execution of the Stalking Horse Agreement. The Debtors' decision to enter into the Stalking Horse Agreement and grant the Bid Protections is a sound exercise of business judgment. The Bid Protections, including, but not limited to, the Break-Up Fee and Expense Reimbursement, are an actual and necessary cost and expense of preserving the Debtors' estates. The Stalking Horse Purchaser as provided an actual and necessary benefit to the Debtors, their estates, and their creditors by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Assets. Without the Bid Protections, the Stalking Horse Purchaser is unwilling to remain obligated to consummate the Sale Transaction or otherwise be bound under the Stalking Horse Agreement (including the obligation to maintain its committed offer while such offer is subject to higher or better offers as contemplated by the Bid Procedures).

I.      The Stalking Horse Purchaser is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling shareholders existed between the Stalking Horse Purchaser and the Debtors. The Stalking Horse Purchaser and its respective counsel and advisors have acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code in connection with the Stalking Horse Purchaser's negotiation of and entry into the Stalking Horse Agreement. All negotiations between the Stalking Horse Purchaser, the Debtors, and their respective advisors have been in good faith, at arms' length, and without collusion.

J.      The proposed Notice of Assumption and Assignment, substantially in the form annexed as **Exhibit 2**, is adequate and reasonably calculated to provide adequate notice concerning the proposed assumption, assignment, and sale of the Debtors' executory contracts and unexpired leases (the "**Assumed Contract**") and will provide due and adequate notice of the relief sought in the Motion.

K.      The procedures set forth below regarding notice to all parties in interest of the time, date, and place of the hearing to consider approval of the Sale Transaction (the "**Sale Hearing**") and the filing of objections thereto, comply with Bankruptcy Rule 2002 and constitute sufficient notice to all interested parties and provide sufficient notice of the proposed Sale Transaction.

L.      The notice of the Motion, the Bid Procedures Hearing, and the proposed entry of this Order are adequate and sufficient under the circumstances of the Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.  Accordingly, no further notice of the Motion, the Bid Procedures Hearing, or this Order is necessary or required.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is granted as provided herein.

2.      All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are hereby overruled with prejudice.

3.      The Bid Procedures are hereby approved in their entirety in the form annexed hereto as **Exhibit 1** and are incorporated herein.  The failure to specifically include or

reference any particular provision of the Bid Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bid Procedures are approved in their entirety, as if fully set forth in this Order.  All actions of the Debtors as authorized herein may be taken by any officer or director of the Debtors. Notwithstanding the foregoing, the consummation of the Sale Transaction shall remain subject to entry of a further order of this Court (the "**Sale Order**") which shall serve as an order approving the Sale Transaction free and clear of any interests under section 363 of the Bankruptcy Code.

4.    The Debtors are authorized to proceed with the Sale Transaction in accordance with the Bid Procedures and are authorized to take any and all actions necessary or appropriate to implement the Bid Procedures in accordance with the terms thereof and the following timeline:

| | |
|---|---|
| **Deadline to File Notice of Assumption and Assignment and Schedule of Proposed Cure Costs** | February 24, 2017 |
| **Deadline to Serve Sale Hearing Notice** | February 27, 2017 |
| **Sale Hearing Notice Publication Deadline** | March 1, 2017 |
| **Bid Deadline** | March 6, 2017 |
| **Deadline to File Rights Notice** | March 6, 2017 |
| **Deadline to Notify Qualified Bidders** | March 8, 2017 |
| **Auction (if required)** | March 10, 2017 |
| **Deadline to Object to Sale Transaction** | March 13, 2017 |
| **Assumption and Assignment Objection Deadline** | March 13, 2017 |
| **Sale Hearing** | March 15, 2017 |

5.     The process for submitting Qualified Bids (as defined in the Bid Procedures) is fair, reasonable, and appropriate and is designed to maximize recoveries for the benefit of the Debtors' estates, their creditors, and other parties in interest.  Any disputes as to the selection of a Qualified Bidder and the Successful Bidder (as defined in the Bid Procedures) shall be resolved by this Court.

6.     The Debtors are authorized to conduct the Auction in the event they receive one or more timely and acceptable Qualified Bids.  If the Stalking Horse Purchaser's bid, as reflected in the Stalking Horse Agreement, is determined by the Debtors, in consultation with the advisors to the Administrative Agent, to be the only Qualified Bid in respect of the Assets that is received by the Debtors by the Bid Deadline, no Auction will be conducted for the Assets and the Stalking Horse Purchaser shall be deemed the Successful Bidder for the Assets.

7.     Subject to final Court approval at the Sale Hearing, the Debtors are authorized to enter into the Stalking Horse Agreement with the Stalking Horse Purchaser.

8.     If the Administrative Agent (or one or more of its designees, affiliates, or assignees), on behalf of the lenders party to the Credit Agreement, credit bids at the Auction, and such credit bid is determined to be the highest or otherwise best bid, the Debtors shall report the same to the Court and promptly proceed to seek entry of the appropriate orders approving such credit bid.  For the avoidance of doubt, in the event the Administrative Agent (or one or more of its designees, affiliates, or assignees) credit bids, the portion of the proceeds not paid over to the Administrative Agent pursuant to the provisions of paragraph 9(c) of the Cash Collateral Orders, shall be provided to the Debtors in cash.

9.     The Bid Protections are approved in their entirety, including, without limitation the right to a Break-Up Fee of 3% of the Purchase Price, plus an Expense

Reimbursement for up to $1,000,000.  Except as expressly provided for herein, no other Bid Protections are authorized or permitted under this Order.

10.     The Debtors are authorized to pay the Break-Up Fee and Expense Reimbursement, to the extent payable under the Stalking Horse Agreement, without further order of the Court.  The Break-Up Fee and Expense Reimbursement, to the extent payable under the Stalking Horse Agreement, shall constitute an allowed administrative expense claim against the Debtors' estates pursuant to sections 105(a), 503(b), and 507(a)(2) of the Bankruptcy Code.

11.     The form of Notice of Assumption and Assignment annexed hereto as **Exhibit 2** is approved.  The Notice of Assumption and Assignment (i) contains the type of information required under Bankruptcy Rule 2002 that is currently known to the Debtors and (ii) is reasonably calculated to provide due, adequate, and timely notice to all counterparties of (a) the potential assumption and assignment of the Assumed Contracts and rights thereunder, (b) the proposed Cure Costs, and (c) the deadline to file objections to such assumption and assignment, applicable Cure Costs, the existence of any defaults, and/or adequate assurance of future performance.

12.     No later than **February 24, 2017**, the Debtors shall file with the Court and serve via first class mail on (i) all counterparties to any of the Debtors' executory contracts and unexpired leases (together, the "**Contracts**") and (ii) all parties who have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002 ((i) and (ii) collectively, the "**Contract Notice Parties**") a notice of assumption, assignment, and sale, substantially in the form of the Notice of Assumption and Assignment annexed as **Exhibit 2**, listing all of the Assumed Contracts that the Stalking Horse Purchaser proposed to be assumed, assigned, and sold to it, which shall include the Debtors' calculation of the amount necessary to cure all monetary defaults (the "**Cure**

9

**Costs**") for each Assumed Contract.  Service of such Notice of Assumption and Assignment as approved and set forth herein shall be deemed proper, due, timely, good, and sufficient notice of, among other things, the proposed assumption and assignment of the Assumed Contracts and rights thereunder, the Cure Amounts, and the procedures for objecting thereto, and no other or further notice is necessary.

13.     Any counterparty to an Assumed Contract that objects to the proposed Cure Costs or the assumption of its Assumed Contract must file any objection to (i) the proposed assumption, assignment, and sale of the applicable Assumed Contract (and must state in its objection, with specificity, the legal and factual basis thereof) and (ii) if applicable, the proposed Cure Costs (and must state in its objection, with specificity, what Cure Costs are required with appropriate documentation in support thereof) no later than **March 13, 2017 at 4:00 p.m. (prevailing Central Time)** (the "**Assumption and Assignment Objection Deadline**"), on (i) the Debtors; (ii) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Gary T. Holtzer, Esq., Robert J. Lemons, Esq., and Charles M. Persons, Esq.); (iii) the attorneys for the Administrative Agent, Baker & McKenzie LLP, 452 Fifth Avenue, New York, NY 10018 (Attn: James Donnell, Esq., Peter Goodman, Esq. and Frank Grese, Esq.) and (iv) the attorneys for the Stalking Horse Purchaser Locke Lord LLP, 600 Travis Street, Suite 2800, Houston, Texas 77002 (Attn: Elizabeth M. Guffy, Esq.) (collectively, the "**Objection Notice Parties**"); *provided* that if a Successful Bidder other than the Stalking Horse Purchaser prevails at the Auction, then (a) Assumption and Assignment Objection Deadline shall be extended to March 14, 2017, and (b) as soon as practicable after the conclusion of the Auction, the Debtors shall file with the Bankruptcy Court a notice that identifies the Successful Bidder.

14.     If a counterparty to an Assumed Contract files a timely objection asserting a higher Cure Cost than the Cure Cost set forth in the Notice of Assumption and Assignment, and the parties are unable to resolve the dispute consensually prior to the commencement of the Sale Hearing, the amount to be paid or reserve with respect to such objection shall be determined at the Sale Hearing.  All other objections to the proposed assumption and assignment of the Debtors' right, title, and interest in, to, and under the Assumed Contracts shall be heard at the Sale Hearing.

15.     If no objection is timely filed and served, the counterparty to an Assumed Contract shall be deemed to have consented to the assumption, assignment, and sale of the Assumed Contract to the Successful Bidder(s) and shall be forever barred from asserting any objection with regard to the Cure Costs.  Any objections to any Successful Bidder's proposed form of adequate assurance of future performance must be raised prior to the Sale Hearing and shall be resolved at the Sale Hearing.  The Cure Costs set forth in the Notice of Assumption and Assignment, if any, shall be controlling, notwithstanding anything to the contrary in any Assumed Contract, or any document, and the counterparty to the Assumed Contract shall be deemed to have consented to the Cure Costs and shall be forever barred from asserting any other claims related to such Assumed Contract against the Debtors or the Successful Bidder(s), or the property of any of them.

16.     The form of Sale Notice, substantially in the form annexed hereto as **Exhibit 3**, is approved.

17.     Within two (2) business days after the Court enters this Order, the Debtors (or their agents) shall serve the Sale Notice by first class mail on (i) the Office of the United States Trustee for the Southern District of Texas; (ii) counsel to the Administrative Agent; (iii) the Stalking Horse Purchaser; (iv) all Persons known by the Debtors to have expressed an interest to

the Debtors in a transaction with respect to the Assets during the past six (6) months; (v) all entities known by the Debtors to have asserted any lien, claim, encumbrance, or other interest in the Assets (for whom identifying information and addresses are available to the Debtors); (vi) all non-Debtor parties to the Contracts (for whom identifying information and addresses are available to the Debtors); (vii) any Governmental Authority known to have a claim in the bankruptcy cases; (viii) the Securities and Exchange Commission; (ix) the Internal Revenue Service; (x) all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; (xi) all of the Debtors' known creditors; and (xii) any other Persons as directed by the Court (for whom identifying information and addresses are available to the Debtors) (collectively, the "**Sale Notice Parties**").

18.     By March 1, 2017 the Debtors (or their agents) shall cause a summary version of the Sale Notice to be published in the *Houston Chronicle*, *USA Today*, National Edition, *The Panola Watchman*, and the *Longview News-Journal* and on the website established by the Debtors' court approved claims and noticing agent, Kurtzman Carson Consultants LLC, at http://www.kccllc.net/azuremlp.

19.     Service of the Sale Notice as approved and set forth herein shall be deemed proper, due, timely, good, and sufficient notice of, among other things, the entry of this Order, the Bid Procedures, the Auction, the Sale Hearing, and the proposed Sale Transaction, including the transfer of the Debtors' right, title, and interest in, to, and under the Assets free and clear of any and all liens, claims, encumbrances, and other interests, and no other or further notice is necessary.

20.     Objections to the Sale Transaction (including to the sale of Assets subject to such objection free and clear of liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code) and entry of the Sale Order (other than objections to the

assumption and assignment of Assumed Contracts) (each, a "**Sale Objection**") must: (a) be in writing and specify the nature of such objection; (b) comply with the Bankruptcy Rules; and (c) be served on the Objection Notice Parties and the Office of the United States Trustee for the Southern District of Texas by **March 13, 2017 at 4:00 p.m. (prevailing Central Time)**.   All Sale Objections will be heard by the Court at the Sale Hearing.

21.     The failure of any objecting person or entity to timely file and serve a Sale Objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, or to the consummation and performance of the Sale Transaction contemplated by the Stalking Horse Agreement or any purchase agreement with a Successful Bidder, including the transfer of the Assets to the Stalking Horse Purchaser or the Successful Bidder, free and clear of all liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code and will be deemed to consent to the Sale Transaction, including the transfer of the Debtors' right, title, and interest in, to, and under the Assets in accordance with the Stalking Horse Agreement, fee and clear of all liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code.

22.     If any person asserts that any property or right (including an Assumed Contract) cannot be transferred, sold, assumed, and/or assigned free and clear of all liens, encumbrances, claims and other interests on account of the alleged termination of the Debtors' rights in such property or under such agreement or one or more alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights, then such person shall file with the Court and serve a notice on the Notice Parties with all supporting documentation (a "**Rights Notice**") on or before **March 6, 2017 at 4:00 p.m. (prevailing Central Time)** (the "**Rights Notice Deadline**").   Each Rights

Notice must identify the properties or rights that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right, and identify the portion of the agreement, document, or statute giving rise to such right. The assertion of a Rights Notice shall not require an exercise of the underlying right asserted.

23.     Any person filing to timely file and serve a Rights Notice shall be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors, right, title, and interest in, to and under the properties and agreements to be sold, assumed, and/or assigned pursuant to the Stalking Horse Agreement or a definitive agreement for any alternative transaction (as applicable), including, without limitation, asserting the termination of the Debtors' interest in such property or agreement, any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights with respect to the Debtors' transfer, sale, assumption and/or assignment of the Debtors' right, title, and interest in, to, and under such property or agreement, as set forth in the Stalking Horse Agreement or such other definitive agreement for any alternative transaction (if applicable); and (ii) deemed to consent to and approve of the transfer, sale, assumption, and/or assignment of such right, title, and interest in, to, and under such property or agreement, free and clear of all liens, encumbrances, claims, and other interests (regardless of whether such consent must be in writing).

24.     If any person timely files and serves a Rights Notice in accordance with this Order, the Debtors and other parties in interest shall have the opportunity to object to any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, termination rights, or similar rights asserted by such person by filing an objection to such Rights Notice at any time prior to the Sale Hearing. Upon the

filing of such objection to the Rights Notice, any rights asserted shall be deemed to be disputed and the Debtors shall be entitled to assert a bona fide dispute exists as to such asserted rights. Nothing herein shall be deemed to be a waiver of any rights of the Debtors to contest any rights asserted by any person in Rights Notices; all such rights of the Debtors are expressly preserved.

25.     Any party desiring to submit a bid for the Debtors' right, title, and interest in, to and under and of the Assets must comply with the Bid Procedures. Only representatives of the Debtors, makers of Qualified Bids, the Stalking Horse Purchaser, and the advisors for the Administrative Agent shall be entitled to be present at the Auction. Any and all other creditors interested in attending the Auction must provide the Debtors with notice of their intent to attend the Auction no later than ten (10) days before the Auction by sending a fax or e-mail to counsel for the Debtors, Weil, Gotshal & Manges LLP (Attn: Gary T. Holtzer, Esq., Robert J. Lemons, Esq., and Charles M. Persons, Esq.,), email: gary.holtzer@weil.com, robert.lemons@weil.com; Charles.persons@weil.com; Fax: (212) 310-8007. The Debtors may object to and request a hearing regarding the attendance of any particular creditor at the Auction.

26.     The Debtors may, in consultation with the advisors to the Administrative Agent, adjourn or cancel the Auction at or prior to the Auction. If the Auction is cancelled or if the date, time, or place of the Auction is changed, the Debtors shall file a notice with the Court regarding such cancellation or modification and shall publish the notice on the website established by KCC at http://kccllc.net/azuremlp.

27.     The Auction shall be transcribed or videotaped.

28.     The Debtors may, in consultation with the advisors for the Administrative Agent, make alterations to the Bid Procedures and/or terminate discussions with any and all prospective acquirers at any time and without specifying the reasons therefor, but only to the extent

not materially inconsistent with the Bid Procedures, and the relevant portions of the Stalking Horse Agreement, but including changes so as to modify deposit amounts, subsequent bid increments, the makeup of Qualified Bids, and to modify or eliminate the requirements with respect to Back-Up Bidders.

29.     On or before March 11, 2017, the Debtors shall cause the results of the Auction, including a copy of the Successful Bid(s), the identity of the Successful Bidder(s), and each Successful Bidder's proposed form of adequate assurance of future performance, to be filed with the court and published on the website of KCC.

30.     Copies of the Stalking Horse Agreement and Bid Procedures may be downloaded at http://www.kccllc.net/azuremlp or obtained upon receipt of a written request to the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Charles M. Persons, Esq. and David Zubkis, Esq.).

31.     The notice to be provided pursuant to the procedures set forth herein is good and sufficient notice to all parties in interest, and no other further notice need be provided.

32.     The Debtors are hereby authorized to execute any additional or supplemental documents incident to the relief granted pursuant to this Order.

33.     Notwithstanding Bankruptcy Rules 6004, 6006, or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  To the extent applicable, the stays described in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived.

34.     The terms of this Order shall control to the extent of any conflict with the Motion.

35.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated:  Houston, Texas
_____, 2017


_____
DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Bid Procedures**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **AZURE MIDSTREAM** | § | **Case No. 17-30461 (DRJ)** |
| **PARTNERS, LP,** *et al.*, | § | |
| | § | **Jointly Administered** |
| | § | |
| Debtors.[1] | § | |
| | § | |

### BID PROCEDURES FOR THE SALE OF
### SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

Azure Midstream Partners, LP, and its subsidiaries and certain affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), set forth the following bidding procedures (the "**Bid Procedures**") to be employed in connection with an auction if the Debtors receive one or more timely and acceptable Qualified Bids (the "**Auction**") for the sale of substantially all of the Assets (as defined herein). At a hearing following the Auction (the "**Sale Hearing**"), the Debtors will seek the entry of an order (the "**Sale Order**") from the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") authorizing and approving the transactions contemplated by the Stalking Horse Agreement, a copy of which is attached to the Motion as **Exhibit B** (the "**Stalking Horse Agreement**"), between the applicable Debtors and the Qualified Bidder(s) (as defined herein) that the Debtors, in consultation with the advisors to the Administrative Agent, determine to have made the highest or otherwise best bid(s) (each, a "**Successful Bidder**"). The Stalking Horse Agreement provides for the transfer of the Debtors' right, title, and interest in, to, and under substantially all of the Debtors' assets. These Bid Procedures have been approved and authorized pursuant to the *Order Approving (a) Bid Procedures, (b) Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Related Notices, (c) Notice of Auction and Sale Hearing, and (d) Related Relief* [ECF No. __] entered by the Court on [___], 2017.

#### Approvals

The proposed sale (the "**Sale Transaction**") shall in all respects be subject to approval by the Court and in compliance with: (i) the applicable provisions of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"); (ii) the Federal Rules of Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Azure Midstream Partners, LP (7595), Azure ETG, LLC (3388), Azure Holdings GP, LLC (0537), Azure Midstream Partners GP, LLC (8089), Azure TGG, LLC (6233), Marlin G&P I, LLC (6073), Marlin Logistics, LLC (8460), Marlin Midstream Finance Corp. (0130), Marlin Midstream, LLC (2587), Murvaul Gas Gathering, LLC (0826), Talco Midstream Assets, Ltd. (7004), and Turkey Creek Pipeline, LLC (1161). The Debtors' principal offices are located at 12377 Merit Drive, Suite 300, Dallas, Texas 75251.

Procedure (the "**Bankruptcy Rules**"); and (iii) other applicable rules and law and Orders of the Court.

## Assets to Be Sold

The Auction shall consist of substantially all of the Debtors' assets owned or used in the Debtors' business operations, including, but not limited to, their equipment, cash, intellectual property, executory contracts, and other assets (collectively, the "**Assets**").

## Bid Deadline

Any person or entity interested in participating in the Auction must submit a Qualified Bid (as defined herein) on or before **March 6, 2017 at 5:00 p.m. (prevailing Central Time)** (the "**Bid Deadline**") in writing, to (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Gary T. Holtzer, Esq., Robert J. Lemons, Esq., and Charles M. Persons, Esq.), (ii) corporate counsel for the Debtors, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3700, Dallas, TX 75201 (Attn: Michael Saslaw, Esq. and Bradley Foxman, Esq.), and (iii) the attorneys for the Administrative Agent (as defined herein), Baker & McKenzie LLP, 452 Fifth Avenue, New York, NY 10018 (Attn: James Donnell, Esq., Peter Goodman, Esq., and Frank Grese, Esq.). The Debtors may extend the Bid Deadline, in consultation with the advisors for Wells Fargo Bank, N.A., as administrative agent under that certain Credit Agreement dated as of February 27, 2015 (the "**Administrative Agent**"), but shall promptly notify all potential bidders of any such extension.

## Qualified Bids

To participate in the bidding process and be deemed a "Qualified Bidder," each potential bidder must submit a "Qualified Bid" by the Bid Deadline. To constitute a Qualified Bid, a bid must:

(a)   be in writing;

(b)   identify the Assets, or the portion thereof, to be purchased, the liabilities, if any, to be assumed, and the cash purchase price, which cash purchase price must exceed the Stalking Horse bid of $151,100,000, plus the Break-Up Fee, plus the Expense Reimbursement, plus an initial overbid amount of $1,000,000 (each, such bid an "**Initial Topping Bid**");

(c)   include a proposed list of the Debtors' Contracts that the potential bidder proposes to be assumed, assigned, and sold to it in connection with the transaction (the "**Assumed Contracts**") and proposed adequate assurance of future performance under such Assumed Contracts;

(d)   to the extent a potential bidder as not already executed such an agreement, include an executed version of a valid confidentiality or non-disclosure agreement, in form and substance satisfactory to the Debtors;

(e)        fully disclose the legal identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

(f)        fully disclose any connections or agreements with the Debtors, any non-Debtor affiliate of the Debtors, any other known potential bidders or Qualified Bidders, and/or any officer or director of the Debtors;

(g)        provide an irrevocable offer in the form of an executed copy of the Stalking Horse Agreement with any proposed modifications (a "**Modified Asset Purchase Agreement**"), including all exhibits and schedules contemplated thereby (other than exhibits and schedules that, by their nature, must be prepared by the Debtors);

(h)        include a marked copy of the Modified Asset Purchase Agreement reflecting the differences between the Modified Asset Purchase Agreement and the Stalking Horse Agreement;

(i)        state that such bidder is financially capable of consummating the transactions contemplated by the Modified Asset Purchase Agreement and detail the source(s) of funds that will be used to consummate the transactions;

(j)        include satisfactory evidence of committed financing or other financial ability to consummate the transactions contemplated by the Modified Asset Purchase Agreement in a timely manner;

(k)        expressly acknowledge and represent that the potential bidder (i) has had an opportunity to conduct any and all due diligence regarding the business and assets of the Debtors prior to making its bid, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and the Assets in making its Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the business or Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Modified Asset Purchase Agreement ultimately accepted and executed by the applicable Debtors;

(l)        not be conditioned on the obtaining or sufficiency of financing or any internal approval, or on the outcome or review of due diligence;

(m)        not contain any condition to closing of the transaction on the receipt of any third-party approvals (excluding required Court approval and any required governmental and/or regulatory approval, if any);

(n)       include evidence of authorization and approval from the potential bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Sale Transaction;

(o)       state the specific person(s) whom the Debtors' investment bankers, Evercore Group LLC, should contact in the event that the Debtors have any questions or wish to discuss the Modified Asset Purchase Agreement;

(p)       include a good faith deposit (the "**Good Faith Deposit**") in the form of a certified or bank check (or other form acceptable to the Debtors in their sole and absolute discretion) payable to the order of Azure Midstream Partners LP in an amount equal to ten (10%) percent of the purchase price offered to purchase the Assets.  All Good Faith Deposits shall be held in a segregated account by the Debtors or in an escrow account established by the Debtors pursuant to an escrow agreement mutually agreed to by the parties thereto, until no later than five (5) days after the Sale Hearing and thereafter returned to the respective bidders in accordance with the Bid Procedures, unless the bidder has been selected as the Successful Bidder or the Back-Up Bidder (as defined below).

The Debtors, in consultation with the advisors to the Administrative Agent, shall make a determination regarding whether a bid constitutes a Qualified Bid and shall notify bidders whether their bids have been determined to be Qualified Bids by no later than **March 8, 2017 at 5:00 p.m. (prevailing Central Time)**.

The Debtors will consider, in consultation with the advisors to the Administrative Agent, bids for less than a substantial (but nevertheless a material) portion of the Assets.  With the goal and primary purpose of selling substantially all of the Assets, the Debtors, in consultation with the advisors for the Administrative Agent, may accept as a single Qualified Bid, multiple bids for non-overlapping material portions of the Assets such that, when taken together in the aggregate, such bids would otherwise meet the standards for a single Qualified Bid.  The Debtors, in consultation with the advisors to the Administrative Agent, may permit otherwise Qualified Bidders who submitted bids by the Bid Deadline for less than a substantial (but nevertheless a material) portion of the Assets but who were not identified as a component of a single Qualified Bid consisting of such multiple bids, to participate in the Auction and to submit higher or otherwise better bids that in subsequent rounds of bidding may be considered, together with other bids for non-overlapping material portions of the Assets, as part of such a single Qualified Bid for overbid purposes.

## Credit Bid[2]

Notwithstanding anything herein to the contrary, the Administrative Agent (or one or more of its designees, affiliates, or assignees), on the behalf of the Prepetition Secured Parties,

---

[2] Capitalized terms used in this section but not defined herein shall have the meanings ascribed to those terms in the Cash Collateral Order (as defined herein).

shall have the unqualified right to credit bid, at any time (including, but not limited to, after the Bid Deadline has passed), any or all of the Prepetition Indebtedness in any sale of the Assets, including under or pursuant to section 363 of the Bankruptcy Code and in accordance with that interim order authorizing the Debtors' use of cash collateral, dated February 1, 2017, *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507, Fed. R. Bankr. P. 2002, 4001, 6003, 6004, and 9014, and Bankruptcy Local Rule 4001-1 (i) Authorizing Debtors' Limited Use of Cash Collateral, (ii) Granting Adequate Protection to the Prepetition Secured Parties, (iii) Modifying the Automatic Stay, and (iv) Scheduling a Final Hearing* [Dkt. No. 46] (the "**Cash Collateral Order**").  If the Administrative Agent or its designees, affiliates, or assignees credit bids any or all of the Prepetition Indebtedness, the Administrative Agent or its designees, affiliates, or assignees shall be deemed to be a "Qualified Bidder" for all purposes herein, and such credit bid shall be deemed to be a "Qualified Bid" for all purposes herein, without any further action by the Administrative Agent or its designees, affiliates, or assignees.  Notwithstanding anything to the contrary contained herein, if the Administrative Agent or its designees, affiliates, or assignees elects to credit bid, the portion of the proceeds not paid over to the Administrative Agent pursuant to the provisions of paragraph 9(c) of the Cash Collateral Order, shall be paid to the Debtors in cash.

In addition, notwithstanding anything herein to the contrary, in conjunction with its rights herein to credit bid, the Administrative Agent or its designees, affiliates, or assignees shall have the unqualified right to provide financing to prospective bidders, including, but not limited to, through credit bidding all or a portion of the Prepetition Indebtedness, and any bid submitted that includes financial backing for a portion or all of such bid from the Administrative Agent or its designees, affiliates, or assignees, shall be deemed to be a "Qualified Bid" for all purposes herein.

## Auction, Auction Procedures and Overbids

In the event that the Debtors receive one or more timely Qualified Bids with an acceptable purchase price, the Debtors shall conduct the Auction.  The Auction, if required, will be conducted at the offices of Weil, Gotshal & Manges LLP, 700 Louisiana Street, Suite 1700, Houston, Texas 77002 on **March 10, 2017 at 9:00 a.m. (prevailing Central Time)**, or such other time and location as designated by the Debtors, in consultation with the advisors to the Administrative Agent, in a notice to all Qualified Bidders.  The Debtors shall have the right to conduct any number of Auctions on such date to accommodate Qualified Bids for certain, but less than all, of the Debtors' Assets, including for Assets not acquired by the Stalking Horse Purchaser, if the Debtors determine, in their business judgment in accordance with their fiduciary duties, and in consultation with the advisors for the Administrative Agent, that such process would be in the best interests of the Debtors' estates.  The Debtors reserve the right, in their reasonable discretion, and subject to the exercise of their business judgment and in accordance with their fiduciary duties, and in consultation with the advisors to the Administrative Agent, to adjourn or cancel the Auction at or prior to the Auction.  If the Auction is cancelled or if the date, time, or place of the Auction is changed, the Debtors will file a notice with the Court regarding such cancellation or modification and will publish the notice on the website of KCC at http://www.kccllc.net/azuremlp.

The Auction shall be governed by the following procedures, subject to modification by the Debtors, in consultation with the advisors to the Administrative Agent, at the Auction:

(a)     The Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative.

(b)     Only representatives of the Debtors, Qualified Bidders, and the Administrative Agent shall be entitled to be present at the Auction. Any and all other creditors interested in attending the Auction must provide the Debtors with notice of their intent to attend the Auction no later than ten (10) days before the Auction by notifying counsel for the Debtors, Weil, Gotshal & Manges LLP (Attn: Gary T. Holtzer, Esq., Robert J. Lemons, Esq., and Charles M. Persons, Esq.). The Debtors may object to and request a hearing regarding the attendance of any particular creditor at the Auction.

(c)     Only the Qualified Bidders shall be entitled to make any subsequent bids at the Auction.

(d)     Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.

(e)     Bidding shall commence at the initial highest bid, which the Debtors shall announce prior to the Auction (such bid, the "**Opening Bid**"). The Opening Bid may be an Initial Topping Bid or the Stalking Horse Bid.

(f)     Qualified Bidders may then submit successive bids higher than the previous bid, based on and increased from the Initial Topping Bid, in increments of $500,000. The Debtors reserve the right, in consultation with the advisors to the Administrative Agent, and subject to the exercise of the Debtors' business judgment, to announce reductions or increases in minimum incremental bids at any time during the Auction.

(g)     If the Stalking Horse Purchaser bids at the Auction for the Assets, it shall be entitled to a "credit" in the amount of the Break-Up Fee and Expense Reimbursement to be counted towards its bid.

(h)     All Qualified Bidders shall have the right to submit additional bids and make additional modifications to the Stalking Horse Agreement or their respective Modified Asset Purchase Agreement, as applicable, at the Auction to improve such bids.

(i)     The Auction may include individual negotiations with the Qualified Bidders and/or open bidding in the presence of all other Qualified Bidders.

(j)     The Debtors reserve the right to (i) determine, in their reasonable discretion, in consultation with the advisors to the Administrative Agent, which bid is the highest or otherwise best and (ii) reject at any time, without liability, any offer that the Debtors, in their reasonable discretion, in consultation with the advisors to the Administrative Agent, deem to be (a) inadequate or

insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or procedures set forth therein or in these Bid Procedures, or (c) contrary to the best interests of the Debtors and their estates.

(k)     The Auction among Qualified Bidders shall continue according to these procedures until the Debtors determine, in consultation with the advisors for the Administrative Agent, and subject to Court approval, that the Debtors have received Successful Bid(s).  In making this decision, the Debtors may consider, without limitation, the amount of the purchase price, the amount of proposed assumed liabilities, the value of any excluded assets, the form of consideration being offered, the tax consequences of such bid, the likelihood of the Qualified Bidder's ability to close a given transaction, the proposed timing thereof, and rights of such Qualified Bidder and the Debtors with respect to the termination thereof, the number, type and nature of any changes reflected in the Modified Asset Purchase Agreement requested by each Qualified Bidder, the extent to which such changes are likely to delay closing of the Sale Transaction and the cost to the Debtors of such changes or delay, and the net benefit to the Debtors' estates, taking into account the Stalking Horse Purchaser's rights to the Break-Up Fee and Expense Reimbursement.  The Qualified Bidder(s) submitting such Successful Bid(s) for the Assets shall become the Successful Bidder(s) and shall have such rights and responsibilities of a purchaser, as set forth in the Modified Asset Purchase Agreement or Stalking Horse Agreement, as applicable.

(l)     The Auction shall be transcribed or videotaped.

(m)     Unless otherwise expressly consented to in writing by the Successful Bidder(s), the Debtors shall not consider any bids submitted after the conclusion of the Auction, and any and all such bids shall be deemed untimely and shall under no circumstances constituted a Qualified Bid.

All Qualified Bidders at the Auction shall be deemed to have consented to the exclusive jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction.

On or before March 11, 2017, the Debtors shall cause the results of the Auction, including a copy of the Successful Bid(s) and the identity of the Successful Bidders, to be filed with the Court and published on the website of KCC, at http://www.kccllc.net/azuremlp.

### Back-Up Bidder and Return of Good Faith Deposit

If an Auction is conducted, the Qualified Bidder(s) with the next highest or otherwise best Qualified Bid(s) for the Assets at the Auction (the "**Back-Up Bid**") shall be required to serve as the back-up bidder(s) (the "**Back-Up Bidder**") for such Assets and keep such Back-Up Bid(s) open and irrevocable until the first to occur of (i) thirty (30) days after the

completion of the Auction, (ii) consummation of the transaction with the Successful Bidder, or (iii) the termination of the Back-Up Bidder's obligations under the Stalking Horse Agreement or Modified Asset Purchase Agreement with the Successful Bidder.  Following the Sale Hearing if the Successful Bidder fails to consummate an approved Sale Transaction because of a breach or failure to perform on the part of such Successful Bidder or otherwise, the Back-Up Bidder will be automatically deemed to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Court.

Except as provided herein, Good Faith Deposits shall be returned, without interest, to each bidder not selected by the Debtors as the Successful Bidder or the Back-Up Bidder by no later than the fifth (5th) business day following the conclusion of the Auction.  The Good Faith Deposit of the Back-Up Bidder shall be held by the Debtors until five (5) business days after the closing of the Sale Transaction with the Successful Bidder or termination of the Back-Up Bid as provided for above.

For the avoidance of doubt, the Administrative Agent or its designees, affiliates, or assignees, may determine, in its sole and absolute discretion, whether it will serve as a Back-Up Bidder in connection with any credit bid, and, under no circumstances, should it be required to serve as a Back-Up Bidder.  In the event the Administrative Agent or its designees, affiliates, or assignees exercises its discretion not to serve as a Back-Up Bidder, the third-highest bidder, to the extent determined to be acceptable to the Debtors, in consultation with the advisors to the Administrative Agent, shall be deemed to be the Back-Up Bidder.

## Reservation of Rights

The Debtors reserve the right, subject to the exercise of the Debtors' business judgment in accordance with their fiduciary duties, and in consultation with the Administrative Agent, to alter or terminate these Bid Procedures, to waive terms and conditions set forth herein with respect to all potential bidders, extend the deadlines set forth herein, alter the assumptions set forth herein, provide reasonable accommodations to any Potential Bidders with respect to such terms, conditions, and deadlines of the Bid Procedures and bid process to promote further bids by such bidders and/or to terminate discussions with any and all prospective acquirers and investors (except for the Successful Bidder(s)) at any time and without specifying the reasons therefor, in each case to the extent not materially inconsistent with these Bid Procedures; provided further that the Debtors' exercise of their discretion in evaluating bids and administering the Bid Procedures and bid process is subject to the provisions of the Stalking Horse Agreement and does not permit, and shall not be construed as permitting, the Debtors to deviate materially from the procedures, terms, conditions and protections set forth in these Bid Procedures.  Notwithstanding anything herein to the contrary, nothing in these Bid Procedures shall, or shall be construed to, in any way amend, impair, alter or otherwise modify the terms of the Stalking Horse Agreement (as may be modified in accordance with its terms) or the Stalking Horse Purchaser's rights thereunder.

Notwithstanding anything herein to the contrary, all rights of the Administrative Agent and Prepetition Secured Lenders (as defined in the Cash Collateral Order) with respect to the Prepetition Loan Documents (as defined in the Cash Collateral Order), the Cash Collateral Order, the Bankruptcy Code or other applicable law shall be fully preserved.

## Sale Hearing

The Successful Bid(s) will be subject to approval by the Court.  The Sale Hearing will take place on **March 15, 2017 at 10:30 a.m. (prevailing Central Time)** before the United States Bankruptcy Court, Southern District of Texas, 515 Rusk Street, Houston, Texas 77002.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court on the date scheduled for the Sale Hearing or on the Court's docket.

The Debtors' presentation to the Court for approval of a Successful Bid does not constitute the Debtors' acceptance of the bid.  The Debtors will be deemed to have accepted a bid only once the bid has been approved by order of the Court.

## Consent to Jurisdiction and Authority as a Condition to Bidding

All Qualified Bidders shall be deemed to have (i) consented to the core jurisdiction of the Court to enter an order or orders, which shall be binding in all respects, in any way related to the Bid Procedures, the Auction, or the construction and enforcement of any Stalking Horse Agreement, Modified Asset Purchase Agreement, or any other document relating to the Sale Transaction, (ii) waived any right to a jury trial in connection with any disputes relating to the Bid Procedures, the Auction, or the construction and enforcement of any Stalking Horse Agreement, Modified Asset Purchase Agreement or any other document relating to the Sale Transaction, and (iii) consented to the entry of a final order or judgment in any way related to the Bid Procedures, the Auction, or the construction and enforcement of any Stalking Horse Agreement, Modified Asset Purchase Agreement, or any other document relating to the Sale Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## Sale is "As Is/Where Is"

Except as otherwise provided in an applicable Stalking Horse Agreement, Modified Asset Purchase Agreement, or any order approving the Sale Transaction, any and all portions of Assets sold pursuant to the Bid Procedures shall be conveyed at the closing of the Sale Transaction in their then-present condition, "**As is, with all faults, and without any warranty whatsoever, express or implied.**"

## Proceeds

All valid and properly perfected liens and security interests against the Assets shall attach to the proceeds of the sale of such Assets.

**<u>Exhibit 2</u>**

**Notice of Assumption and Assignment**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|                          |    |                          |
|--------------------------|----|--------------------------|
| In re:                   | §  | Chapter 11               |
|                          | §  |                          |
| **AZURE MIDSTREAM**      | §  | Case No. 17-30461 (DRJ)  |
| **PARTNERS, LP,** *et al.*, | § |                        |
|                          | §  | Jointly Administered     |
|                          | §  |                          |
| Debtors.[1]              | §  |                          |
|                          | §  |                          |

### NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES WHICH MAY BE ASSUMED AND ASSIGNED IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND THE PROPOSED CURE AMOUNTS WITH RESPECT THERETO

You are receiving this *Notice of Executory Contracts and Unexpired Leases Which May Be Assumed and Assigned in Connection With the Sale of Certain of the Debtors' Asset and the Proposed Cure Amounts With Respect Thereto* (the "**Notice of Assumption and Assignment**") because you may be a counterparty to an executory contract or unexpired lease with Azure Midstream Partners, LP, and/or its subsidiaries and certain affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"). Please read this notice carefully as your rights may be affected by the transactions described herein.

PLEASE TAKE NOTICE that on [___], 2017, the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") entered an order (the "**Bid Procedures Order**") approving the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 363, 365, and 503 and Fed. R. Bankr. P. 2002, 6004, and 6006 for Entry of (i) Order Approving (a) Bid Procedures, (b) Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Related Notices, (c) Notice of Auction and Sale Hearing, and (d) Related Relief and (ii) Order Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, (b) Approving Assumption, Assignment, and Sale of Certain Executory Contracts and Unexpired Leases and Related Cure Amount, and (c) Granting Related Relief* [ECF No.___] (the "**Motion**"). The Motion and Bid Procedures Order set forth certain procedures (the "**Bid Procedures**") in connection with the sale of substantially all of the Debtors' assets (the "**Sale Transaction**").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Azure Midstream Partners, LP (7595), Azure ETG, LLC (3388), Azure Holdings GP, LLC (0537), Azure Midstream Partners GP, LLC (8089), Azure TGG, LLC (6233), Marlin G&P I, LLC (6073), Marlin Logistics, LLC (8460), Marlin Midstream Finance Corp. (0130), Marlin Midstream, LLC (2587), Murvaul Gas Gathering, LLC (0826), Talco Midstream Assets, Ltd. (7004), and Turkey Creek Pipeline, LLC (1161).  The Debtors' principal offices are located at 12377 Merit Drive, Suite 300, Dallas, Texas 75251.

PLEASE TAKE FURTHER NOTICE that pursuant to the Bid Procedures Order, the Debtors have established procedures for the assumption, assignment and sale of certain executory contracts and unexpired leases (collectively, the "**Contracts**") to a potential purchaser and the determination of related Cure Costs (as defined herein). The Debtors are parties to numerous Contracts and, in accordance with the Bid Procedures Order, hereby file this notice identifying (i) the Contracts which may be assumed and assigned to a Successful Bidder in connection with the Sale Transaction (such Contracts, the "**Assumed Contracts**") and (ii) the proposed amounts, if any, the Debtors believe are owed to the counterparty to the Assumed Contracts to cure any defaults or arrears exiting under the Assumed Contract (the "**Cure Costs**"), both as set forth on **Exhibit 1** attached hereto.

PLEASE TAKE FURTHER NOTICE that the hearing to approve the sale of the Assets (the "**Sale Hearing**") will take place before the Honorable David R. Jones, United States Bankruptcy Judge, United States Bankruptcy Court, Southern District of Texas, 515 Rusk Avenue, Houston, Texas 77002 on **March 15, 2017 at 10:30 a.m. (prevailing Central Time)**.

PLEASE TAKE FURTHER NOTICE that the listing of an Assumed Contract on **Exhibit 1** does not constitute an admission that the agreement is an executory contract or unexpired lease as contemplated by section 365(a) of the Bankruptcy Code or that the Debtors have any liability thereunder, and the Debtors expressly reserve all of their rights, claims, causes of action, and defenses with respect to the Assumed Contracts listed on **Exhibit 1**.

PLEASE TAKE FURTHER NOTICE that any objections to the assumption, assignment, and sale of any Assumed Contract identified in this notice (except with respect to the adequate assurance of future performance by any successful bidder(s) or objections to the Cure Costs set forth in **Exhibit 1**) must be (i) in writing, (ii) filed with the Bankruptcy Court and (iii) served on (a) the Debtors; (b) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Gary T. Holtzer, Esq., Robert J. Lemons, Esq., and Charles M. Persons, Esq.); (c) the attorneys for the Administrative Agent, Baker & McKenzie LLP, 452 Fifth Avenue, New York, NY 10018 (Attn: James Donnell, Esq., Peter Goodman, Esq. and Frank Grese, Esq.); and (d) the attorneys for the Stalking Horse Purchaser, Locke Lord LLP, 600 Travis Street, Suite 2800, Houston, TX 77002 (Attn: Elizabeth M. Guffy, Esq.); by **March 13, 2017 at 4:00 p.m. (prevailing Central Time)** (the "**Assumption and Assignment Objection Deadline**"). Any such objections must set forth the proposed objection to the assumption, assignment, and sale of the Assumed Contracts (and must state, with specificity, the legal and factual basis thereof) and, if applicable, the proposed Cure Costs (and must state, with specificity, what Cure Costs are required with appropriate documentation in support thereof). Other than the Cure Costs listed on **Exhibit 1**, the Debtors are not aware of any amounts due and owing under the Assumed Contracts listed therein.

PLEASE TAKE FURTHER NOTICE that objections with respect to the Successful Bidder(s) proposed form of adequate assurance of future performance must be raised prior to the Sale Hearing and will be resolved at the Sale Hearing.

PLEASE TAKE FURTHER NOTICE that if a counterparty to an Assumed Contract files a timely objection asserting a higher Cure Cost than the Cure Costs set forth in the

Notice of Assumption and Assignment, and the parties are unable to consensually resolve the dispute prior to the commence of the Sale Hearing, the amount to be paid or reserved with respect to such objection shall be determined at the Sale Hearing.  All other objections to the proposed assumption and assignment of the Debtors' right, title and interest in, to and under the Assumed Contracts, including objections to the proposed form of adequate assurance, shall be heard at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE that each non-Debtors party to any Assumed Contract that does not timely file an objection by the Assumption and Assignment Objection Deadline shall be forever barred from asserting any objection with regard to the assumption, assignment, sale and/or Cure Costs set forth on <u>Exhibit 1</u>, including any objections with respect to the adequate assurance of future performance by the Successful Bidder(s).  The Cure Costs set forth in the Notice of Assumption and Assignment shall be controlling, notwithstanding anything to the contrary in any Assumed Contract or any other document, and the counterparty to the Assumed Contract shall be deemed to have consented to the Cure Costs and shall be forever barred from asserting any other claims related to such Assumed Contract against the Debtors or the Successful Bidder(s), or the property of any of them to the extent such counterparty does not file a timely objection to the Cure Costs set forth above.**

**PLEASE TAKE FURTHER NOTICE** that, if any person asserts that any property or right (including an Assumed Contract) cannot be transferred, sold, assumed, and/or assigned free and clear of all liens, encumbrances, clams, and other interests on account of the alleged termination of the Debtors' rights in such property or under such agreement or one or more alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights, then such person shall file with the Court and serve a notice on the Notice Parties with all supporting documentation (a "**<u>Rights Notice</u>**") on or before **March 6, 2017 at 4:00 p.m. (prevailing Central Time)** (the "**<u>Rights Notice Deadline</u>**").  Each Rights Notice must identify the properties or rights that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right, and identify the portion of the agreement, document, or statute giving rise to such right.  The assertion of a Rights Notice shall not require an exercise of the underlying right asserted.  Any person failing to timely file and serve a Rights Notice shall be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title and interest in, to and under the properties to be sold, assumed and/or assigned pursuant to the Stalking Horse Agreement or a definitive agreement for any alternative transaction (as applicable), including, without limitation, any alleged termination, approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights with respect to the Debtors' transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to, and under such property or agreement, as set forth in the Stalking Horse Agreement or such other definitive agreement for any alternative transaction (if applicable), and (ii) deemed to consent to and approve of the transfer, sale, assumption, and/or assignment of such right, title and interest in, to and under such property or agreement, free and clear of all liens, encumbrances, claims and other interests (regardless of whether such consent must be in writing).  If any person timely files and serves a Rights Notice in accordance with this Order, the Debtors and other parties in interest shall have the opportunity to

object to any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights asserted by such Person by filing an objection to such Rights Notice at any time prior to the Sale Hearing. Upon the filing of such objection to the Rights Notice, any rights asserted shall be deemed to be disputed and the Debtors shall be entitled to assert that a bona fide dispute exists as to such rights asserted.  Nothing herein shall be deemed to be a waiver of any rights of the Debtors to contest any rights asserted by any Person in Rights Notices; all such rights of the Debtors are expressly preserved.

Dated: [DATE], 2017
      Houston, Texas

                                _____

                                Christopher M. López (24041356)
                                WEIL, GOTSHAL & MANGES LLP
                                700 Louisiana Street, Suite 1700
                                Houston, Texas  77002
                                Telephone: (713) 546-5000
                                Facsimile:  (713) 224-9511
                                Email: chris.lopez@weil.com

                                -and-

                                Gary T. Holtzer (admitted *pro hac vice*)
                                Robert J. Lemons (admitted *pro hac vice*)
                                Charles M. Persons (admitted *pro hac vice*)
                                WEIL, GOTSHAL & MANGES LLP
                                767 Fifth Avenue
                                New York, New York  10153
                                Telephone:  (212) 310-8000
                                Facsimile:   (212) 310-8007
                                Email:  gary.holtzer@weil.com
                                Email:  robert.lemons@weil.com
                                Email:  charles.persons@weil.com

                                *Proposed Attorneys for the Debtors*
                                *and Debtors in Possession*

**<u>Exhibit 3</u>**

**Sale Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| **AZURE MIDSTREAM** | § | Case No. 17-30461 (DRJ) |
| **PARTNERS, LP,** *et al.*, | § |  |
|  | § | Jointly Administered |
|  | § |  |
| Debtors.[1] | § |  |
|  | § |  |

## NOTICE OF AUCTION AND SALE HEARING

**TO PARTIES IN INTEREST IN THE CHAPTER 11 CASES OF AZURE MIDSTREAM PARTNERS, LP AND ITS AFFILIATED DEBTORS:**

   **PLEASE TAKE NOTICE** that:

   1.     **Approval of Bid Procedures**.  By Order dated [___], 2017 [ECF No. [_]] (the "**Order**"), the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") authorized the Debtors to market, solicit bids, conduct an auction (the "**Auction**"), and select the highest or otherwise best bidder at the Auction for the sale and transfer (the "**Sale Transaction**") of all or substantially all of the Debtors' assets (the "**Assets**").  The terms of the solicitation of bids, conduct of the Auction, and selection of the highest or otherwise best bid for the Assets shall be governed by the Court-approved bidding procedures (the "**Bid Procedures**").  Copies of the Bid Procedures and the Order can be accessed free of cost on the website established by the Debtors' claims and noticing agent, Kurtzman Carson Consultants ("**KCC**") at http://www.kccllc.net/azuremlp.  The Order also approved the Debtors' selection of M5 Midstream LLC (the "**Stalking Horse Purchaser**") to serve as a stalking horse purchaser and the provision of bid protections thereto (the "**Bid Protections**").

   2.     **Auction**.  Pursuant to the Order and the Bid Procedures, if the Debtors receive one or more timely and acceptable Qualified Bids (as defined in the Bid Procedures), in addition to the Stalking Horse Purchaser's bid, for the Assets, an Auction shall take place on **March 10, 2017 at 9:00 a.m. (prevailing Central Time)**, at the offices of Weil, Gotshal & Manges LLP, 700 Louisiana Street, Suite 1700, Houston, Texas 77002.  Only parties that have submitted a Qualified Bid, as set forth in the Bid Procedures, by no later than **March 6, 2017 at 5:00 p.m. (prevailing Central Time)** (the "**Bid Deadline**") may bid at the Auction.  Any party

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Azure Midstream Partners, LP (7595), Azure ETG, LLC (3388), Azure Holdings GP, LLC (0537), Azure Midstream Partners GP, LLC (8089), Azure TGG, LLC (6233), Marlin G&P I, LLC (6073), Marlin Logistics, LLC (8460), Marlin Midstream Finance Corp. (0130), Marlin Midstream, LLC (2587), Murvaul Gas Gathering, LLC (0826), Talco Midstream Assets, Ltd. (7004), and Turkey Creek Pipeline, LLC (1161).  The Debtors' principal offices are located at 12377 Merit Drive, Suite 300, Dallas, Texas 75251.

that wishes to take part in this process and submit a bid for the Assets must submit their bid prior to the Bid Deadline and in accordance with the Bid Procedures.  Only representatives of the Debtors, Qualified Bidders, and the Administrative Agent shall be entitled to be present at the Auction.  Any and all other creditors interested in attending the Auction must provide the Debtors with notice of their intent to attend the Auction by sending a fax or e-mail to counsel for the Debtors, Weil, Gotshal & Manges LLP (Attn: Gary T. Holtzer, Esq., Robert J. Lemons, Esq., and Charles M. Persons, Esq.) (gary.holtzer@weil.com; robert.lemons@weil.com; charles.persons@weil.com) Fax: 212-310-8007.

3.      **Objections to Assumption and Assignment**.  No later than February 24, 2017, the Debtors shall file with the Court a notice of assumption, assignment and sale (the "**Notice of Assumption and Assignment**") listing all of the Contracts that the Successful Bidder proposed to be assumed, assigned, and sold to it in connection with the Sale Transaction (an "**Assumed Contract**").  Any counterparty to an Assumed Contract shall file any objection to the proposed assumption, assignment, and sale of the Assumed Contracts (and must state in its objection, with specificity, the legal and factual basis thereof) no later than **March 13, 2017 at 4:00 p.m. (prevailing Central Time)**.

4.      **Sale Hearing**.  A hearing (the "**Sale Hearing**") to consider the sale of the Assets to the Successful Bidder(s) will be held at **10:30 a.m. (prevailing Central Time) on March 15, 2017**, before the Honorable David R. Jones, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas 77002. The Sale Hearing may be continued from time to time without further notice other than the announcement by the Debtors of the adjourned date(s) at the Sale Hearing or any continued hearing or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Bankruptcy Court.

5.      **Objection to Sale Transaction**.  Objections to the Sale Transaction, if any, must be filed and served so as to actually be received by (i) the Debtors; (ii) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Gary T. Holtzer, Esq., Robert J. Lemons, Esq., and Charles M. Persons, Esq.); (iii) corporate counsel to the Debtors, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3700, Dallas, TX 75201; (iv) the attorneys for the Administrative Agent, Baker & McKenzie LLP, 452 Fifth Avenue, New York, NY 10018 (Attn: James Donnell, Esq., Peter Goodman, Esq. and Frank Grese, Esq.); and (v) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, TX 77002 (Attn: Hector Duran, Esq.); no later than **March 13, 2017 at 4:00 p.m. (prevailing Central Time)**.

6.      Unless an objection is timely served and filed in accordance with this notice, it may not be considered by the Bankruptcy Court and the Bankruptcy Court may grant the relief requested in the Sale Motion without further hearing and notice.

7.      **Rights Notice**.  If any person asserts that any property or right (including an Assumed Contract) cannot be transferred, sold, assumed, and/or assigned free and clear of all liens, encumbrances, claims, and other interests on account of the alleged termination of the Debtors' rights in such property or under such agreement or one or more alleged approval rights, consent

rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights, then such person shall file with the Court and serve a notice on the Notice Parties with all supporting documentation (a "**Rights Notice**") on or before **March 6, 2017 at 4:00 p.m. (prevailing Central Time)** (the "**Rights Notice Deadline**").  Each Rights Notice must identify the properties or rights that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right, and identify the portion of the agreement, document, or statute giving rise to such right.  The assertion of a Rights Notice shall not require an exercise of the underlying right asserted.  Any person failing to timely file and serve a Rights Notice shall be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title and interest in, to and under the properties to be sold, assumed and/or assigned pursuant to the Stalking Horse Agreement or a definitive agreement for any alternative transaction (as applicable), including, without limitation, any alleged termination, approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights with respect to the Debtors' transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to, and under such property or agreement, as set forth in the Stalking Horse Agreement or such other definitive agreement for any alternative transaction (if applicable), and (ii) deemed to consent to and approve of the transfer, sale, assumption, and/or assignment of such right, title and interest in, to and under such property or agreement, free and clear of all liens, encumbrances, claims and other interests (regardless of whether such consent must be in writing).  If any person timely files and serves a Rights Notice in accordance with this Order, the Debtors shall have the opportunity to object to any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights asserted by such Person by filing an objection to such Rights Notice at any time prior to the Sale Hearing.  Upon the filing of such objection to the Rights Notice, any rights asserted shall be deemed to be disputed and the Debtors and other parties in interest shall be entitled to assert that a bona fide dispute exists as to such rights asserted.  Nothing herein shall be deemed to be a waiver of any rights of the Debtors to contest any rights asserted by any Person in Rights Notices; all such rights of the Debtors are expressly preserved.

8.      This Notice of Auction and Sale Hearing is subject to the fuller terms and conditions of the Order and the Bid Procedures, with such Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the Assets and/or copies of any related document, including the Sale Motion, the Stalking Horse Agreement, or the Order, may make a written request to: counsel for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Gary T. Holtzer, Esq., Robert J. Lemons, Esq., and Charles M. Persons, Esq.).  In addition, copies of the Sale Motion, the Order, and this Notice may be examined by interested parties (i) free of charge at the website established for these chapter 11 cases by the Debtors' court appointed claims agent, Kurtzman Carson Consultants LLC, at http://kccllc.net/azuremlp or (ii) on the Court's electronic docket for the Debtors chapter 11 cases, which is posted on the internet at www.txs.uscourts.gov/bankruptcy (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov).

Dated: _____, 2017
      Houston, Texas

 

                          _____

                          Christopher M. López (24041356)
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email: chris.lopez@weil.com

-and-

Gary T. Holtzer (admitted *pro hac vice*)
Robert J. Lemons (admitted *pro hac vice*)
Charles M. Persons (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Email:  gary.holtzer@weil.com
Email:  robert.lemons@weil.com
Email:  charles.persons@weil.com

*Proposed Attorneys for the Debtors
and Debtors in Possession*

4