**<u>Exhibit B</u>**

**Evercore Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| **AZURE MIDSTREAM** | § | **Case No. 17-30461 (DRJ)** |
| **PARTNERS, LP**, *et al.*, | § | |
| | § | **Jointly Administered** |
| | § | |
| Debtors.[1] | § | |
| | § | |

**DECLARATION OF ROBERT PACHA IN SUPPORT OF EXPEDITED MOTION OF
DEBTORS PURSUANT TO 11 U.S.C. §§ 105, 363, 365, AND 503 AND FED. R. BANKR. P.
2002, 6004, AND 6006 FOR ENTRY OF (I) ORDER APPROVING (A) BID PROCEDURES,
(B) PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND RELATED NOTICES, (C)
NOTICE OF AUCTION AND SALE HEARING, AND (D) RELATED RELIEF AND (II)
ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER
INTEREST, (B) APPROVING ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND RELATED CURE
AMOUNTS, AND (C) GRANTING RELATED RELIEF**

I, Robert Pacha, make this declaration pursuant to 28 U.S.C. § 1746:

       1.      I am a Senior Managing Director at Evercore Group, LLC ("**Evercore**"), an investment banking advisory and investment management firm.  Evercore has extensive experience in providing high quality investment banking services in financially distressed situations, including advising debtors, creditors, and other constituents in chapter 11 cases and out-of-court restructurings.  Evercore is the investment banker to the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Azure Midstream Partners, LP (7595), Azure ETG, LLC (3388), Azure Holdings GP, LLC (0537), Azure Midstream Partners GP, LLC (8089), Azure TGG, LLC (6233), Marlin G&P I, LLC (6073), Marlin Logistics, LLC (8460), Marlin Midstream Finance Corp. (0130), Marlin Midstream, LLC (2587), Murvaul Gas Gathering, LLC (0826), Talco Midstream Assets, Ltd. (7004), and Turkey Creek Pipeline, LLC (1161).  The Debtors' principal offices are located at 12377 Merit Drive, Suite 300, Dallas, Texas 75251.

2.      Established in 1996, Evercore is a leading independent investment banking advisory and investment management firm.  Evercore's investment banking business includes its advisory business, which provides a range of financial advisory services to multinational corporations on mergers and acquisitions, divestitures, special committee assignments, recapitalizations, restructurings, and other strategic transactions.  Evercore and its affiliates serve a diverse set of clients around the world from offices in New York, Boston, Chicago, Los Angeles, Washington D.C., San Francisco, Houston, Minneapolis, Palo Alto, Menlo Park, Hong Kong, Singapore, London, Aberdeen, Mexico City, Monterrey, São Paulo, and Rio de Janeiro.  Since the beginning of 2000, Evercore's corporate advisory and restructuring advisory groups have advised on over $1.8 trillion of transactions.  Evercore was engaged on November 23, 2015 by the Debtors to serve as one of their investment bankers as part of a dual-track process exploring options for a potential sale of all or substantially all of the Debtors' assets (the "**Assets**") or a preferred equity investment in the Debtors.

3.      I am a Senior Managing Director in Evercore's corporate advisory business. I am a leading advisor to companies in the energy sector with a specific focus on the midstream sector, which includes natural gas transportation, compression, gathering, processing and storage, as well as crude oil and refined products transportation and storage.

4.      Since starting Evercore's Houston-based investment banking practice in June 2009, I have advised on many of the largest transactions in the energy sector including advising Kinder Morgan, Inc. on its $38.5 billion acquisition of El Paso Corporation; Southern Union Company on its $5.8 billion merger with Atlas Pipeline Partners, L.P; Access Midstream Partners GP, L.L.C. on the $38.4 billion merger of Access Midstream Partners, L.P. and Williams Partners L.P.; Crestwood Equity Partners LP on its $6.0 billion merger with Crestwood Midstream

Partners LP; Crestwood Gas Services GP LLC on the $7.0 billion merger of Crestwood Midstream Partners LP with Inergy Midstream; and PVR GP, LLC on the $5.6 billion merger of PVR Partners, L.P. and Regency Energy Partners, LP.   In addition I have completed numerous midstream asset sale transactions including:  Eagle Rock Energy Partners, L.P.'s $1.325 billion contribution of its Midstream Business to Regency Energy Partners, LP; the sale of Velocity South Texas Gathering LLC to Plains All American Pipeline, L.P. for $352.0 million and the sale of Keystone Midstream Services LLC to Mark West Energy Partners, L.P. for $512.0 million.

5.      I have been with Evercore since 2009 and have 24 years of investment banking experience, having previously served as Managing Director at Bank of America Merrill Lynch, where I led the firm's midstream energy and MLP practice.

6.      I received a B.S. in Economics from the University of Pennsylvania's Wharton School and an M.B.A from the Harvard Business School.

7.      I submit this declaration (the "**Declaration**") in support of the *Expedited Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 363, 365, and 503 and Fed. R. Bankr. P. 2002, 6004, and 6006 for Entry of (i) Order Approving (a) Bid Procedures, (b) Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Related Notices, (c) Notice of Auction and Sale Hearing, and (d) Related Relief and (ii) Order (a) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, (b) Approving Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases and Related Cure Amounts, and (c) Granting Related Relief* (the "**Motion**").  In particular, I submit this Declaration as evidence supporting my opinion that the prepetition sale and marketing process identified all potential bidders for the Assets, and

that entry into a transaction pursuant to the bidding procedures set forth in the Motion presents the best means to maximize the value of the Debtors' estates.

8.      Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the Debtors, employees or agents working for the Debtors, or my opinion based upon experience, knowledge, and information concerning the Debtors' operations, restructuring, and M&A transactions.  If called upon to testify, I would testify in accordance with the facts set forth in this Declaration.  I am authorized to submit this Declaration on behalf of the Debtors.

9.      The Debtors' pursuit of a going-concern sale transaction began in 2015, following a thorough evaluation of all options available to the Debtors.  In late 2015 and continuing into 2016, Evercore, along with certain of the Debtors' other advisors, advised on a dual-track process exploring options for a potential sale of the Debtors or a preferred equity investment in the Debtors.  As part of the sale process, the Debtors' advisors contacted 20 potential transaction partners, including strategic buyers (*i.e.*, companies already operating in the industry) and financial buyers (such as private equity firms) to gauge interest in a potential transaction.  While the Debtors received four proposals for a potential sale from the initial marketing period, they received no proposals for a preferred equity investment.  Of the sale proposals received, two proposals implied values for the Debtors below prepetition debt levels, another proposal contemplated a joint venture with no cash consideration, and the final proposal was to acquire the Debtors' Panola processing plant.[2]

10.      Subsequently, Evercore and the Debtors continued discussions with private equity firms and other parties potentially interested in an investment in or purchase of the

---

[2] The Debtors' proceeded with the sale of the Panola facility for $45 million.

Debtors' Assets and engaged in a new marketing process for the Assets. After considering all options, the Debtors' advisors, in consultation with the advisors to Wells Fargo Bank, N.A., as administrative agent (the "**Administrative Agent**"), decided to focus their efforts on the pursuit of the Sale Transaction as opposed to an equity investment. Specifically, beginning in November 2016, Evercore has engaged with over 70 strategic and financial counterparts, including MLPs, public midstream C-Corporations, privately-held midstream oil and gas companies, and potential financial sponsors, which parties were identified based on Evercore's experience in the industry. During this process, parties who executed confidentiality agreements were provided with a Confidential Information Memorandum containing significant diligence and other confidential information about the Debtors' businesses. Twenty-five different parties ultimately executed confidentiality agreements.

11.     As the result of Evercore's extensive marketing efforts, the Debtors received eleven indications of interest on or about December 15, 2016 for either an acquisition of all or a portion of the Debtors' Assets or for refinancing a portion of the Debtors' prepetition secured debt. From those indications of interest, the Debtors qualified seven bidders to move to a second-stage process. Those bidders moving to the second stage were provided with access to a data room with additional information about the Assets beginning in January 2017. Bidders moving to the second stage were also provided access to management through management presentations, and were provided copies of the form of Stalking Horse Agreement (as defined in the Motion). Management presentations were conducted for five of the bidders. The Debtors received three second-stage bids on January 26, 2017. Additionally, one joint venture proposal was received on January 26, 2017 with respect to the construction of a new pipeline and related assets and the entry into a transportation services agreement.

12.     After extensive deliberations with their advisors and separate negotiations with the potential bidders that participated in the second stage of the process, the Debtors have elected to proceed with the bid submitted by M5 Midstream LLC (the "**Stalking Horse Purchaser**") as the highest or otherwise best bid received for the Assets, subject to the Debtors' receipt of any higher or otherwise better bids at an Auction to be held on March 10, 2017.  In evaluating the proposals, the Debtors and Evercore analyzed, among other things: (i) the consideration offered by each potential buyer, (ii) the conditions to be imposed by each potential buyer, including the conditions to closing, (iii) the potential buyer's ability to close a transaction, (iv) the proposal's impact on the Debtors' secured lenders and trade creditors; and (v) the proposals' treatment of and effect on the Debtors' employees.

13.     In my opinion, the prepetition marketing process conducted by the Debtors was successful in locating and bringing to the table any and all parties potentially interested in the Assets, and the Assets were fairly and thoroughly marketed.  In my opinion, a further marketing process would not yield additional Qualified Bids (as defined in the Motion) or be an efficient use of the Debtors' resources.

14.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: February 10, 2017
        Houston, Texas

                                          _/s/ Robert Pacha_____